## TOWN OF CANTON v. McDANIEL, Appellant.

### In Banc, April 25, 1905.

1. **APPELLATE JURISDICTION: Federal Question: Interstate Commerce.** In a suit by a city to recover a fine from the defendant for carrying on the business of a merchant without a license, this instruction was asked by defendant and refused: "The court instructs the jury that the business engaged in by the defendant is regulated by the Interstate Commerce law, and the town of Canton cannot impose taxes or license fees upon the same; your verdict will, therefore, be for the defendant." *Held*, that this instruction raised a Federal question, and the appeal from a julgment imposing the fine on defendant was to the Supreme Court, but having been erroneously allowed to the Court of Appeals that court properly certified it to this court.

2. **SALES BY SAMPLES: Payment at Point of Delivery.** Where the payment of the purchase-money at the place of delivery is a condition of the sale, and the property remains in the vendor until the purchase price is paid and the goods delivered, the sale takes place at the point of delivery. In such case the sale is inchoate or executory while the goods are in transit.

3. **————: ————: Delivery to Consignor: Instruction: Merchant.** The defendant, a citizen of Illinois, went from place to place in Lewis county and took orders for groceries from various persons, and notified them that the goods would be delivered at Canton at some future time. He sent the orders to a Chicago company, which shipped them to Canton consigned to itself, and sent the bill of lading to John W. Ray of Canton, endorsing thereon, "Deliver to the order of John W. Ray," and by separate letter directed Ray, who was a grain merchant, that the goods were not to be delivered to the persons from whom defendant had taken orders "without being paid for," and on their arrival at Canton defendant paid the freight charges, and the goods were delivered at Ray's warehouse at Canton to such persons as paid for those they had previously ordered, the money being paid to defendant, who turned the amount of the invoice over to Ray, and kept the balance.

*Held,* first, that the sale was at the place of delivery to the purchasers.

*Held,* second, that the facts constituted defendant a merchant within the meaning of the statute.

*Held,* third, that this instruction was correct: "A sale of goods by sample to be' afterwards delivered at a certain place to be paid for on delivery at that place, in law, constitutes a sale at the time and at the place when and where the goods are to be delivered and paid for; and the storing of a quantity of goods in a room or place there to be kept until delivered to customers, and there kept until afterwards delivered to 25 or 30 customers and by them then and there paid for, will, in law, constitute the party so storing and delivering the goods to said several customers and receiving the purchase price therefor from them, a merchant at the room and place where the goods were stored, delivered and paid for."

4. ———: **Merchant.** One individual sale of goods will not constitute the seller a merchant; but the obtaining of a large number of orders for goods to be delivered to various persons at a storehouse or warehouse there to be paid for, does constitute the person so selling them a merchant.

5. ———: **Refusal to Sell to Others.** Evidence that the defendant, on the day he delivered goods to persons from whom he had previously taken orders for them, refused to sell goods to other persons who desired to buy goods, should be excluded. If he only had goods for those he had agreed to supply, his refusal to sell to others did not tend to disprove that he sold to those he did supply.

6. ———: **Interstate Commerce: Original Packages.** Defendant, a citizen of another State, took orders for goods from various persons in this State, sent the orders to a Chicago company, which shipped the goods to a town in this State, consigned to itself, and on the bill of lading directed them to be there delivered to a third person, and directed him to see that no goods were "delivered without being paid for." The goods were put up in small paper packages and shipped in large boxes and barrels, and when a customer called for the goods ordered by him defendant would search out packages of the right size and kind, and deliver them to him, and he would pay for them there. *Held,* first, that the transaction was a purchase by defendant of the .Chicago company; second, that defendant was not a peddler, but a merchant; third, the goods were not sold and delivered in the original packages, nor was the sale an interstate transaction.

7. **CITY FINES: Former Acquittal.** An action by a city to re-cover a fine from a merchant for selling goods without a license in violation of a city ordinance, is a civil action, and is, not affected by a criminal prosecution by the State of the defendant before a justice of the peace for a violation of the statute for pursuing the occupation of a merchant without having first obtained a license as such. Nor was an acquittal in the latter prosecution a bar to the civil action by the city.

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*Jerry M. Jeffries* for appellant; *Edgar B. Tolman* of counsel.

(1) It is the contract of sale which passes the title, and not the payment of the purchase price or the delivery of the goods. Penn v. Hess, 17 L. R. A. 182; Connable v. Clark, 26 Mo. App. 162. (2) The title to unspecified goods sold passes at the very instant the goods are designated under the terms of the contract. Andrews v. Cheney, 62 N. H. 404; Bank v. Bangs, 102 Mass. 291; Black on Sales, 122, 127; Benjamin on Sales, p. 358. To constitute a sale between the parties, the actual delivery is not necessary. The exception is when the goods are a part of a larger mass from which they must be selected by counting or weighing, and then the sale is complete as soon as the separation is made, but no delivery or payment of the purchase price is necessary. Mfg. Co. v. Jones, 64 Mo. App. 218. In every sale the first essential element is the contract. The remaining elements of the sale are simply the execution of that contract. Under the instructions of the court the making of the contract was entirely eliminated and disregarded. This was error. Benjamin on Sales, p. 172; State v. Hoffman, 50 Mo. App. 587. (3) The laws of the State and of the town of Canton require every person dealing as a merchant to make a

sworn statement of the amount of stock of goods on hand at the time he begins business as a merchant, and if he has been in the business for some time, of the greatest amount he has on hand at any one time between the first day of March and the first day of June of each year. This necessarily implies that the law requiring a merchant's license was intended only to affect those who have a stock of goods on hand and are ready to deliver the same to the purchaser as soon as the goods are ordered. State v. Railroad, 116 Mo. 22; Ordinance of the Town of Canton, ch. 2, secs. 5, 19. To be a merchant the defendant must keep a stock of goods on hand and be ready to make delivery of the goods as soon as ordered. Kansas City v. Lorber, 64 Mo. App. 604; State v. Martin, 5 Mo. 361; State v. Cox, 32 Mo. 566; State v. Whittaker, 33 Mo. 457; R. S. 1899, secs. 3540, 8546. A person in order to be held to be a merchant must keep on hands for sale and offer for sale goods that are ready for delivery at the time they are ordered and must actually deal in the selling of them. State v. West, 34 Mo. 428; State v. Richeson, 45 Mo. 577. The statute does not intend that every man who sells a single article should be deemed a merchant. Had that been the intention of the law the language would be: "Every person who sells goods, wares or merchandise shall be deemed a merchant." The single act of selling will not constitute a person a merchant. State v. Martin, 5 Mo. 361; State v. Cox, 32 Mo. 566; State v. Whittaker, 33 Mo. 457. The defendant was a commercial traveling agent and not a merchant. State v. Hoffman, 50 Mo. App. 587. (4) Where the parties to the transaction reside in different States, as in this case, interstate commerce laws would apply to them at the making of the contract, and all acts under the contract subsequent thereto would be regulated by the Federal government under rights given it by the Constitution, and no State or municipality can impose a tax upon the business or the goods. State v. Emert,

103 Mo. 241; Ferry Co. v. State, 114 U, S. 226; Cooley
on Taxation, p. 61; State v. Cook, 41 L. R. A. 501; Stern-
vers v. Stilsing, 52 N. J. L. 517; Brown v. Railroad, 125
U. S. 465; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727;
Wolfe Dryer Co. v. Bigler, 192 Pa. St. 466. The ordi-
nance under which the defendant was prosecuted is a
revenue measure and not a police regulation. It is, as
interpreted in the instructions, in conflict with the Con-
stitution as to infringement upon interstate com-
merce. Brennan v. Titusville, 153 U. S. 299. A non-
resident vendor (and in this case both the vendor and
his agents are non-residents), has a right to take orders
for goods and to ship his goods into the interior of a
State for distribution according to order. Brennan v.
Titusville, 153 U. S. 301; Leisly v. Hardin, 153 U. S.
108; Robbins v. Taxing Dist., 120 U. S. 489; Weldon v.
Mo., 91 U. S. 275.

*O. C. Clay* and *A. F. Haney* for respondent.

(1) A sale of personal property is a transfer of
the absolute or general property in a thing for a price
in money. Milling Co. v. Ins. Co., 25 Mo. App. 265;
Thompson & Co. v. Massey, 76 Mo. App. 201; Nance v.
Metcalf, 19 Mo. App. 188; State v. Wingfield, 115 Mo.
436; Benjamin on Sales (7 Ed.), sec. 1. Goods which
are a part of a larger mass from which they must be
separated by counting, weighing or measuring, or
goods to be hereafter procured and supplied to the
buyer, or to be manufactured for his use, are the prop-
er subjects only of executory agreements, contracts for
the future sale and delivery of them. Cunningham v.
Ashbrook, 20 Mo. 553; Hamilton v. Clark, 25 Mo. 437;
Hatch v. Oil Co., 100 U. S. 124; Benjamin on Sales
(7 Ed.), sec. 352. (2) The sale of a specific chattel
passes the property in it to the vendee without deliv-
ery. But where there is a sale of goods generally, no
property in them passes till delivery, because until

then the very goods sold are not ascertained. Hamilton v. Clark, 25 Mo. App. 437; Benjamin on Sales (7 Ed.), sec. 315; Hopkins v. Cowen, 47 L. R. A. 126; State v. Wernwag, 28 L. R. A. 297. Even in those cases where the courts hold that the delivery of goods by the vendor to the common carrier when ordered by the purchaser to be shipped to him, passes the title in the goods, such conclusion is based on the doctrine that it is the act of delivery which passes the title and that the delivery to the carrier is a constructive delivery to the purchaser. Comstock v. Affœlter, 50 Mo. 411; Graff v. Foster, 67 Mo. 519; Armentrout v. Railroad, 1 Mo. App. 161; Scharff v. Meyer, 133 Mo. 444; Dunn v. State, 3 L. R. A. 199; Herron v. State (Ark.), 10 S. W. 25; Benjamin on Sales (7 Ed.), sec. 362. (3) The court did not err in instructing what would constitute one a merchant. Ord. of Town of Canton, ch. 2, sec. 5; R. S. 1899, sec. 8540; State v. Whittaker, 33 Mo. 457; St. Joseph v. Dye, 72 Mo. App. 216; Kansas City v. Lorber, 64 Mo. App. 604. (4) The taxing of defendant did not come under the prohibition of the interstate commerce clause of the Federal Constitution. Robbins v. Taxing Dist., 120 U. S. 497; Brown v. Houston, 114 U. S. 632; State v. Emert, 103 Mo. 241. A uniform tax imposed by a State on all sales made in it, whether they be made by a citizen of it or a citizen of some other State, and whether the goods sold are the produce of that State enacting the law, or of some other State, is valid. Woodruff v. Parham, 8 Wall. 123; Hinson v. Lott, 8 Wall. 148. While a tax may affect more or less the operations of commerce, by diminishing the profits to be derived from the subjects of commerce, it does not for that reason amount to a regulation of commerce within the meaning of the Federal Constitution. Brown v. Houston, 114 U. S. 627; State Tax on Railway Gross Receipts, 15 Wall. 293. When a person bringing goods into the State mixes them with the general property of the State by breaking up the packages, the sale of

the goods may then be taxed. State v. Parsons, 124 Mo. 436; Waring v. Mayor, 8 Wall. 110; State v. Emert, 103 Mo. 241.

GANTT, J.—This is an information or action by the town of Canton against W. W. McDaniel to recover a fine of one hundred dollars for the violation of an ordinance of said town, for exercising and carrying on the business, trade or occupation of a merchant in said town, on the 22d day of December, 1900, by selling and delivering goods, wares and merchandise, to-wit, sugar, flour, coffee, tea and other groceries, and four empty barrels, at a store, stand or place occupied by him for that purpose in said town, without first having obtained from the marshal of said town a license therefor.

The action was commenced before the recorder of the town, and a trial resulted in a fine of twenty dollars against defendant. An appeal was taken to the circuit court of Lewis county and upon a trial therein, the plaintiff recovered a verdict and judgment for ten dollars and costs. From that judgment defendant appealed to the St. Louis Court of Appeals, but that court transferred the cause to this court for the reason that a Federal question was involved, to-wit, that defendant was engaged in interstate commerce, and therefore the town of Canton had no power to impose a tax upon him or his business.

The Federal question was raised by the following instruction offered by defendant and refused by the circuit court: "The court instructs the jury that the business engaged in by the defendant is regulated by the Interstate Commerce law, and the town of Canton cannot impose taxes or license fees upon the same; your verdict will therefore be for the defendant." An exception was duly saved to the denial of this instruction, and preserved in the bill of exceptions.

As the Federal question was properly raised by

the instruction and ruled adversely to defendant, the cause was properly sent to this court by the court of appeals. [State v. Raymond, 156 Mo. 118; Kirkwood v. Meramec Highlands Co., 160 Mo. 111.]

The controlling facts developed on the trial are in substance as follows:

The town of Canton is a municipal corporation organized and existing under a special charter, granted by the General Assembly of Missouri, and approved March 19, 1873. [Laws 1873, pp. 208-220.]

By section 9 of article 6 "the board of trustees [of said town] have power and authority to license, tax and regulate auctioneers, merchants and retailers, grocers, taverns and ordinaries, saloons, dramshops and all places where distilled or fermented liquors are sold, and all vendors of the same, and all hawkers, peddlers, brokers, pawnbrokers and money changers," etc.

The defendant W. W. McDaniels is a resident of the State of Illinois, and the Loverin & Browne Company is a wholesale grocery house in the city of Chicago, Illinois.

In the fall of 1900 defendant went from place to place in Lewis county, Missouri, exhibiting his samples and taking retail orders for groceries from various persons, and of each order so taken defendant made a memorandum and delivered the customer a copy thereof. At the time of taking each order, defendant notified each customer that the goods would be delivered at Canton at some future time, of which he would notify him before making the delivery, and defendant did so afterwards notify each of said purchasers.

After taking a large number of such orders, the defendant sent them to Loverin & Browne Company to be filled. The company filled the orders and sent the goods to Canton, Missouri, consigned to themselves, and sent the bill of lading therefor to Mr. John W. Ray, of Canton, Missouri, and indorsed thereon, "Deliver to the order of John W. Ray." Mr. Ray is, or

was at the time, a grain merchant doing business in Canton. The authority of Mr. Ray in the matter is disclosed by the following letter:

"Chicago, December 18, 1900.
"Mr. John W. Ray,
   "Canton, Mo.

"Dear Sir: At the request of Mr. W. W. McDaniel, we hand you herewith a bill for collection, with bill of lading attached, amounting to $218.47, for a shipment of groceries to him, and will allow you two per cent for collecting.

"We presume Mr. McDaniel has explained this matter to you, but we will say that this collection covers a number of orders sold to customers in and around Canton who will call for their goods at the depot there on the 21st instant, and you will please see that no goods are delivered without being paid for.

"Should there be any goods left over after delivery they can be returned to us as so much cash in settlement at the invoice price, provided the freight charges are prepaid by Mr. McDaniel.

"You are not authorized to take notes or anything but current exchange in payment for this collection.

          "Yours truly,
      "LOVERIN & BROWNE COMPANY."

He testifies that when the goods arrived in Canton, he went with Mr. McDaniel to the station and directed the goods turned over to McDaniel. McDaniel paid the freight and then the goods were taken to his (Ray's) warehouse in Canton.

Ray testifies further that he did not see McDaniel sell anyone goods on that day; he was merely delivering goods that had been previously sold to parties he had sold to; that he, Ray, was the agent of Loverin & Browne Company as far as collecting the bill for these goods was concerned. They paid him two per cent for so doing. No goods were delivered except

those which he had previously contracted to deliver and for which orders were taken and contracts made before defendant sent the order to Loverin & Browne Company. At the time of the delivery of the goods the money for the same was paid to the defendant McDaniel, who turned it over to Mr. Ray, the latter having instruction from Loverin & Browne Company to see that no goods were delivered except such as were paid for.

When the several orders were taken by McDaniel he had no goods on hand with which to fill the orders, nor had Loverin & Browne Company any goods within the State of Missouri at the time the order for the same was taken.

All the goods delivered by the defendant in Canton, on the 22d day of December, 1900, were shipped from the city of Chicago in the State of Illinois to the town of Canton, Missouri, after the orders were secured for the same from the residents of Lewis and Clark counties. At the time of the payment for the goods, according to previous arrangements and contracts, each of the purchasers paid his pro-rata share of the freight charges on the goods from Chicago to Canton. It was for delivering groceries in this manner that the defendant was prosecuted in this cause.

Previous to the institution of this cause the prosecuting attorney of Lewis county filed an information before a justice of the peace charging the defendant with selling goods as a merchant without a license on the same day that he afterwards was charged in this cause with selling goods as a merchant without license. The case instituted by the prosecuting attorney was tried by a jury and the defendant was found not guilty. In the circuit court on a trial of this cause, the defendant filed his plea of *autrefois acquit,* and contends that this is the second jeopardy for the same offense.

The ordinance which the defendant is charged to have violated provides: ''No person or persons in

this town shall exercise or carry on any or either of the trades, occupations or employments hereinafter mentioned without first obtaining from the town marshal a license therefor,'' etc.

A subsequent section provides: ''Every person or, copartnership of persons and all corporations that shall exercise or carry on the business, trade or occupation of a merchant or trader by selling, bartering or delivering any goods, wares or merchandise, shall pay an ad-valorem tax equal to that which is levied upon real estate and other property, on the highest amount which they may have in their possession or under their control, whether owned by them or consigned to them for sale, on any day between the first day of March and the first day of June in each year,'' etc.

''The term merchant as herein used shall be construed to include all merchants, commission merchants, grocers and dealers in drugs and medicines.''

Elsewhere in the ordinance it is provided that ''any person convicted of violating any ordinance of the city in which there shall be no penalty fixed for such violation, shall forfeit or pay to the town not less than one dollar nor more than one hundred dollars.''

For the plaintiff the court gave the following instructions:

''2. The jury are instructed that a sale of goods, wares or merchandise by sample to be afterward delivered at a certain place to be paid for on delivery at that place, in law, constitutes a sale at the place and at the time when and where the goods are to be delivered and paid for.

''3. And the storing of a quantity of goods, wares and merchandise in a room or place, there to be kept until delivered to customers and there kept until afterward delivered to twenty or thirty customers, and by them, the customers, then and there paid for, will in law constitute and make the party so storing and delivering the goods, wares or merchandise to the said

several and divers customers, and receiving the purchase price therefor from several customers, a merchant at the room or place where the goods, wares or merchandise were stored, kept, delivered and paid for.

"4. If the jury believe, beyond a reasonable doubt, from the evidence introduced in this cause, that the defendant, W. W. McDaniel, did on the 22d day of December, 1900, occupy a part of the warehouse situated on Lewis street, east of Third street, in the town of Canton, and did then and there have placed and stored in said warehouse and buildings, goods, wares or merchandise, and did then and there deliver to Thomas Chamberlain, Joseph Winkler, R. A. Welch, William Downs and other persons, any goods, wares or merchandise, that is, groceries of any kind and barrels, and did then and there receive the purchase price of said goods, wares or merchandise from said parties to whom defendant or anyone for him, then and there delivered any goods, wares or merchandise; and if the jury shall further believe that the defendant occupied said building for the purpose of delivering said goods to said parties and receiving the purchase price thereof, then the jury must find the defendant guilty, unless they shall further find from the evidence that the defendant had at the time, that is, on December 22, 1900, or prior thereto, procured from the marshal of the town of Canton a license to deal as a merchant in said town of Canton."

At the instance of the defendant the court gave the following instructions to the jury:

"1.   The court instructs the jury that one who supplies goods alone to the previous order of his customers is not a merchant within the meaning of the law. To be a merchant some particular place must be occupied for the purpose of selling, as well as to deliver, the goods.

"4.   The court instructs the jury that the single act of selling one or more articles will not constitute

one a merchant. That is, if it is a single sale of one
or more articles at the same time and place to the same
customer.''

The court refused instructions numbered 1, 2, 4,
7 and 15, which said instructions are in words and
figures as follows; to which action of the court the de-
fendant duly accepted:

''1. .The court instructs the jury that the plain-
tiff must prove beyond a reasonable doubt that the
defendant broke open and tied up the packages, and
must further prove that he sold said packages at a
store, stand or place occupied for that purpose, that
he did not have an order previously taken for the
goods delivered at the store, stand or place, and that
he had the goods on hand at the time the order for
the same was given him or made by the purchaser, and
that the order for the goods or contract for the sale
thereof was made at the place where the goods were
delivered and the purchase price paid, and unless they
prove all these facts beyond a reasonable doubt you
will find the defendant not guilty.

''2. The court instructs the jury that the plaintiff
must prove  beyond a reasonable doubt that the de-
fendant broke open the packages placed in the Ray
warehouse and so sold the broken packages and unless
you so believe beyond a reasonable doubt your verdict
will be for the defendant.

''4. The court instructs the jury that the business
engaged in by the defendant is regulated by the Inter-
state Commerce law, and the town of Canton cannot
impose taxes or license fees upon the same; your ver-
dict will, therefore, be for the defendant.

''7. The court instructs the jury that if the com-
pany for whom the defendant acted, or the defendant
himself, was engaged in the sale of sugar, tea, coffee,
spices, soap and merchandise in the city of Chicago in
the State of Illinois, and that the goods delivered in
the town of Canton were not at the time the defendant

received the order for the same, in the town of Canton, then you will find the defendant not guilty, and you must find that he kept on hands for sale goods that were in the State of Missouri at the time the same were ordered and that he actually dealt in the selling of the same at a store, stand or place occupied by him for that purpose.

"15. The court instructs the jury that the plaintiff must prove beyond a reasonable doubt that the defendant broke open the packages and weighed and tied up the goods in other packages before they can convict, and unless you believe from the evidence that the defendant did so break open the packages your verdict will be for the defendant, even though you shall find from the evidence that the defendant did deal in the selling of the goods at a store, stand or place occupied by him for that purpose."

I. Incidental to and involved in the question whether defendant was a merchant within the meaning of the statute so as to be liable for carrying on business as such, is the question of what is a sale.

The circuit court instructed the jury that "a sale of goods, wares and merchandise by sample to be afterward delivered at a certain place to be paid for on delivery at that place, in law, constitutes a sale at the place and at the time when and where the goods are to be delivered and paid for, and the storing of a quantity of goods, wares and merchandise in a room or place, there to be kept until delivered to customers and there kept until afterwards delivered to twenty-five or thirty customers and by them, the customers, then and there paid for, will in law constitute and make the party so storing and delivering goods, wares, and merchandise to the said several and divers customers and receiving the purchase price therefor from several customers, a merchant at the room or place where the goods, wares and merchandise were stored, kept, delivered and paid for."

The contention of the defendant is that the sale was made when the order was taken; whereas the city insists that it is plain that the various orders for merchandise were not accompanied by the purchase-money, and the written instructions and power-of-attorney to Mr. Ray leave not a doubt that the goods were shipped to Canton as the goods of Loverin & Browne Company and were not to be delivered until the purchase-money was paid therefor, and, therefore, the sales were not completed until the goods were delivered and the money paid at Canton. We agree with counsel for the city that such was unquestionably the fact. This was not a case of delivery of goods to a carrier for a purchaser to be transported to the latter so as to bring it within the generally accepted rule that the delivery to the carrier passes the title to the consignee. [Tiedeman on Sales, sec. 85; Kerwin v. Doran, 29 Mo. App. 397; Garbracht v. Com., 96 Pa. St. 449; State v. Wingfield, 115 Mo. 428.]

It falls strictly within the doctrine announced in State v. Wingfield, that where the payment of the purchase-money at the place of delivery is a condition of the sale, the property remains in the vendor until the purchase price is paid and the goods delivered, and the sale, therefore, is held to have taken place at the point of delivery; that the sale is inchoate and executory, in such circumstances, while the goods are *in transitu.* [State v. O'Neil, 58 Vt. 140; Benjamin on Sales, secs. 311-319-320, notes (C) and (D); State v. Wernwag, 28 L. R. A. 297.]

Not only were the groceries in this case not delivered to the railroad company and consigned to the several purchasers, but they were billed to the consignors themselves with written instructions to deliver to Mr. Ray, and Mr. Ray was especially enjoined not to deliver to any purchaser until the cash was first paid.

It follows the court did not err in its second in-

struction, and the sales must be held to have taken place in Canton at the warehouse of Mr. Ray.

II.   Was there error in holding that the defendant, in making the sales in the circumstances detailed, was liable for not first securing a license as a merchant?

While it is said in the statement that defendant was soliciting orders for Loverin & Browne Company, the letter of the said firm to Mr. Ray, and the evidence of Mr. Ray, indicate that defendant was not the agent of Loverin & Browne Company to deliver the goods and receive the purchase-money therefor.  On the contrary, it appears that before defendant was authorized to deliver the goods he was required to pay the freight charges and the total price of the goods.  This is evidenced by the letter of December 28, 1900, of Loverin & Browne Company to John W. Ray.  They say: "At the request of W. W. McDaniel we hand you herewith a bill for collection, with bill of lading attached, amounting to $218.47, for a shipment of groceries to him, and will allow you two per cent for collecting. . . . You will please see that no goods are delivered without being paid for.  Should there be any goods left over after delivery, they can be returned to us as so much cash in settlement, at the invoice price, *provided* the freight charges are prepaid by Mr. McDaniel.  You are not authorized to take notes or anything but current exchange in payment for this collection."

In this connection Mr. Ray testified:

"Q.   Did you collect this bill, $218?   A.   Yes, sir.

"Q.   And you collected it from Mr. McDaniel as he took it from the customers?   A.   Yes, sir.

"Q.   You turned the rest over to him?   A.   Yes, sir; let him keep the rest of it."

He further testified that Mr. McDaniel arranged with him to have the goods delivered at his (Ray's) warehouse and the customers came there and got the

goods at the place McDaniel occupied in said warehouse. McDaniel was delivering the goods to the various parties for whom he had previously ordered them.

It thus appears that the Loverin & Browne Company had in fact sold the goods to McDaniel, the defendant, on condition that he was to pay the freight charges and the invoice of $218.47, and that Ray was appointed Loverin & Browne's agent to collect the invoice price; that McDaniel paid the freight, and the invoice price to Ray, and received the balance of the price for which he sold the goods for himself.

Did these facts constitute him a merchant within the meaning of our statutes? Section 8540, Revised Statutes 1899, provides: "Every person, corporation or copartnership of persons, who shall deal in the selling of goods, wares and merchandise, including clocks, at any store, stand or place occupied for that purpose, is declared to be a merchant." The ordinance of Canton follows this statute, and requires every person carrying on the business, trade, or occupation of a merchant to pay an ad-valorem tax and requires him or it to first take out and procure a license on such business.

This is an old statute in this State. It was construed in State v. Whittaker, 33 Mo. 457. It was therein said: "We cannot go beyond the statute to find any other definition of a merchant."

"The essence of the offense charged is the dealing as a merchant without a license. The single act of selling one or more articles would not constitute the offense." [State v. Cox, 32 Mo. 566.] In that case it appears that selling hams was a part of the regular business of defendant.

In that case, it was said: "This indictment charges that the defendant did sell at a store, stand or place occupied for that purpose various articles of goods, wares and merchandise, thus defining the defendant as a merchant dealing without a license."

In Kansas City v. Lorber, 64 Mo. App. l. c. 609, SMITH, P. J., for the court, said: "The word merchant, in the sense in which it is used in the charter, we think comprehends the various kinds of merchants. If one is a dealer in any article or commodity, that is to say, is engaged in buying and selling the same, for profit, he is a merchant." Conceding that one individual transaction of selling one or several articles will not constitute one a merchant within the purview of section 8540, Revised Statutes 1899, and of the ordinance of Canton, can it be said this is the whole of defendant's offending? We think not. That he was making a regular business of selling groceries is obvious; that he had obtained a large number of orders also appears; and that he filled the several orders at a warehouse. This was not a mere single transaction with one person, but numerous transactions with a large number of persons. If the defendant could, as he did, sell and deliver to these various persons, goods, wares and merchandise for a profit at a store or place occupied by him at the time for that purpose, and yet not be accounted a merchant in so doing, he could have thus sold and delivered a car load or a train load of goods and not be liable for failing to take out a license as a merchant.

He could thus compete with all other merchants engaged in selling similar goods and wares to a great advantage, as they would necessarily be compelled to add the cost of their licenses in fixing their prices. He would be exempt from a tax which all others in like situation would be and are compelled to pay. Measured by every rule of justice and the statute, we think the facts established, and which the jury have found, constituted the defendant a merchant, and therefore the court did not err in giving its third and fourth instructions.

The first instruction for defendant in its last sentence does not conflict with plaintiff's third instruction. The first sentence in said instruction for defendant is a

seeming contradiction and was misleading, but if it was, it was an error in favor of defendant of which he certainly cannot complain. [Baker v. Railroad, 122 Mo. 533; Christian v. Ins. Co., 143 Mo. l. c. 468; Flowers v. Helm, 29 Mo. 324; State v. Frazier, 137 Mo. 317; R. S. 1899, sec. 2535.]

III.   Nor did the court err in excluding the evidence of witnesses Johnson and Reisching, to the effect that defendant refused to sell them goods that day. His failure or refusal to sell them was evidently for the reason that he only had goods for those customers whom he had agreed to supply. The fact that he refused to sell to those witnesses had no tendency whatever to disprove that he sold to the twenty-five or thirty other persons to whom he did sell.

IV.   Did the court err in refusing to instruct the jury that the business engaged in by defendant was regulated by the Interstate Commerce law, and that the town of Canton could not impose taxes or licenses upon the same, and, therefore, they must find for the defendant?

At first blush we were impressed that this was a sound contention, but an examination of the record and evidence has drawn us to the opposite conclusion.

As already said, the goods were shipped into the State before any sale of them was made. The sales were made in Canton. According to the evidence the goods were Loverin & Browne Company's when they reached Canton. There can be little doubt from Mr. Ballow's evidence that the goods were shipped in one or more large boxes and barrels and put up in small paper packages in brown and manilla paper. He described the proceeding which he witnessed in Mr. Ray's warehouse in this way:

"A gentleman was sitting at a box with a book before him calling off the articles that were to be de-

livered to a certain person whose order they were making up. He would call the articles and Mr. McDaniel selected these articles from the different packages, from different places, put the articles on the floor, placed them in a certain place on the floor altogether, and thus filled up this man's order. A customer would call for his goods and then Mr. McDaniel would deliver them to him and he would pay for them there. When Mr. McDaniel and his assistant would see a man coming at the door, knew he was coming for his packages, they would proceed to make up his order of goods by selecting from the piles or packages and place them in the center of the floor.''

Ballow said he saw a number of packages wrapped in brown paper the size of a package of about ten or fifteen pounds of sugar. He saw a number of such packages piled up there all together in that warehouse and in another place there was a number of packages wrapped in manilla paper. In a word, each customer's package or order was made or filled by selecting that character of goods from the different piles or boxes and placed together. The different packages were not designated before that by the customer's name. There were several empty barrels there.

The evidence of the station master shows that the sugar came in barrels, and large sacks inclosing smaller ones, four sacks of coffee in bulk. There was also a box of scales and a barrel of spices, and this evidence was corroborated by the draymen who hauled the goods from the station to the warehouse. Winkler bought four empty barrels that day of Mr. McDaniel.

Mr. Million's testimony clearly showed there was a promiscuous lot of groceries in the warehouse and from this the customers' orders were filled out.

It is plain there was ample evidence from which the jury were authorized to find the goods ordered by the several purchasers were not delivered to them in the original packages in which they were shipped to

Canton from Chicago. The barrels, boxes and casks were the original packages within the meaning of the law. [State v. Parsons, 124 Mo. 442; Com. to use v. Schollenberger, 27 Atl. 30; Keith v. Alabama, 10 L. R. A. 431.]

Courts and juries are not so obtuse that they cannot discern the true character of transactions like this. The actual vendor is not hidden by the transparent gloss of agency behind which defendant attempts to hide himself. None of these smaller packages were even addressed to or marked with names of the several purchasers, and if they had been that would not have conferred any property rights in them.

The transaction in the eye of the law and common sense was simply a purchase by McDaniel of Loverin & Browne Company of the bill of goods shown by the invoice sent to Mr. Ray. The vendors carefully guarded their rights and required Ray to collect the cash for them at the time of the delivery. This he did and Mr. McDaniel got the profit and retained it. In this way it was supposed the merchant's or peddler's tax was to be evaded. He was not a peddler as that term is understood in our laws, but he was conducting his business in such a way as to render him liable for the merchant's tax. The goods were in the State when they were turned over to him to sell, and were not sold and delivered in the original packages, nor was the sale an interstate transaction. The circuit court properly refused defendant's instruction numbered 4. [State v. Newell, 140 Mo. 282.]

V. The remaining proposition of any materiality is the question of former acquittal pleaded in the answer and disposed of by the court's sixth instruction which directed the jury that the acquittal of defendant on the prosecution of defendant for a misdemeanor under the statute for pursuing the occupation or business of a merchant without first having obtained a license as such, was no defense.

The civil action by the town for violating its ordinance was not affected by the criminal prosecution by the State. The acquittal of the latter was no bar to the civil action. As said by Sherwood, J., in State v. Muir, 164 Mo. l. c. 615: "These deliverances of this court thus establishing that a prosecution under a city ordinance was but a *civil action,* necessarily precluded the idea of a conviction of violating such ordinance from being pleaded in bar of a prosecution by the State of a crime based on a violation of a State statute, which prosecution rests on the same foundation of fact as did the act for doing which the city first moved against the defendant. In a plea in bar to the prosecution of the State, the defendant must allege and prove that he is prosecuted for the same *crime* of which he has been *autrefois convict,* or *autrefois acquit,* in a prior prosecution by the city. But this he cannot prove if the proceeding instituted by the city was but a *civil action.*"

It was so held in State v. Gustin, 152 Mo. 108, based upon the decision in Kansas City v. Clark, 68 Mo. 588; Ex parte Hollwedell, 74 Mo. 395; St. Louis v. Knox, 74 Mo. 79; and St. Louis v. Weitzel, 130 Mo. 600. Judge Cooley in his Const. Lim. (6 Ed.), p. 239, says: "Indeed, an act may be a penal offense under the laws of the State, and further penalties, under proper legislative authority, be imposed for its commission by municipal by-laws, and the enforcement of the one would not preclude the enforcement of the other."

"This," he says, after citing the cases, which are not uniform, "is the clear weight of authority." It follows that the former acquittal in the criminal case was no bar to the civil case by the town, and the court's instruction was right.

The judgment is affirmed.

*Marshall, Burgess, Valliant, Fox* and *Lamm, JJ.,* concur; *Brace, C. J.,* absent.