## No. 13,126.

PEOPLE *v.* HOME OIL AND SUPPLY COMPANY.

(34 P. [2d] 67)

Decided May 28, 1934.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. OLIVER DEAN, Assistant, for plaintiff in error.

Mr. FREDERICK SASS, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error is hereinafter referred to as the state, defendant in error as the Home Company, the Continental Oil Company as the Continental Company, and one Jack Cohan as Cohan.

The state sued the Home Company to recover an excise tax of four cents per gallon on certain cars of gasoline consisting of 108,625 gallons. A general demurrer to the complaint was overruled. Answer and replication were filed. A jury was waived and the cause tried to the court. At the close of the state's evidence the Home Company moved for a nonsuit. The cause was argued and taken under advisement, and some two weeks later judgment for the Home Company was entered. To review that judgment the state prosecutes this writ. The only substantial question presented, of which all others are a part is, Were the shipments in question in interstate commerce? If they were the judgment was right, if not it must be reversed.

Cohan operated a filling station which he rented from the Home Company. He bought his gasoline from the Home Company in Denver, ordering it by car and paying for it when it arrived. There was no contract or understanding as to where it was to come from. He paid by checks to the Home Company which indorsed and cashed them. The cars in question were shipped from Casper, Wyoming, by the Continental Company to itself in Denver, and invoiced at Denver by the Home Company to Cohan May 6, 1929. Both were licensed as Colorado gasoline distributors under section 2, chapter 140, S. L. 1927. The taxes are claimed under chapter 139, S. L. 1929, effective May 1, 1929. Following the name of the consignee in the bills of lading appeared the words,

"Notify Home Oil and Supply Company, for Jack Cohan." The Continental Company indorsed the bills in blank and delivered them to the Home Company. These Cohan received when he paid for the cars. The invoices, on the form of the Home Company and bearing its name, contained the notation, "Sold to Mr. Jack Cohan, 1001 So. Logan, Denver, Colorado."

Since Cohan dealt exclusively with the Home Company and had nothing to do with its orders for gasoline and nothing to do with the persons from whom, or the place from which, it obtained its supply, these were clearly sales in Denver by the Home Company to Cohan.

Section 2 of said act of 1929 imposes the tax on each gallon of gas "offered for sale or used in this state * * * for which tax the distributor first receiving the motor fuel in this state after it has left the refinery of its origin * * * either without or within this state, shall be primarily liable." Section 12 of said act reads: "No provision of this chapter shall apply or be construed to apply to interstate commerce."

Sales completed entirely within a state are not transactions in interstate commerce. 12 C. J., p. 27, §25; *Eastern Air Transport v. S. C. Tax Com.*, 52 F. (2d) 456; *Town of Canton v. McDaniel*, 188 Mo. 207, 86 S. W. 1092. When the commodity transported has reached the end of its journey and has been delivered to the consignee it ceases to be a subject of interstate commerce. *Gulf, etc., Ry. Co. v. Texas*, 204 U. S. 403, 27 Sup. Ct. 360, 51 L. Ed. 540.

Interstate commerce ends when the shipment reaches its destination. The protection, unless otherwise provided by Congress, includes the right to sell by the person introducing the goods, at least up to a point not here material. *Brown v. Maryland*, 12 Wheat. 419, 6 L. Ed. 678. The intent of the person making the shipment has an important, if not controlling, bearing upon the question of where the interstate journey ends. *Texas &*

*N. O. R. R. Co. v. Sabine Tram Co.*, 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442.

A bill of lading stands for the goods and its transfer transfers the title. 10 C. J., p. 201, §265, p. 354, §526; U. S. C. A. Title 49, §§107, 111; *Temple v. So. Ry. Co.*, 190 N. C. 438, 129 S. E. 815. Such also is the allegation of the answer in the instant case.

True it is held that, ordinarily, such a shipment remains in interstate commerce until the car is unloaded and that the state may not tax the product while yet in the tank car. But in that case the court was not dealing with a resale by transfer of the bill of lading, and in the same case the court held that a shipment from state to state might, after reaching its destination and awaiting distribution, be subjected to state taxation. *Texas Co. v. Brown*, 258 U. S. 466, 42 Sup. Ct. 375, 66 L. Ed. 721; *Sonneborn Bros. v. Cureton*, 262 U. S. 506, 43 Sup. Ct. 643, 67 L. Ed. 1095.

When the Home Company took the gasoline, in the cars in which it was received, from the Continental Company, by transfer of the bills, it did not take it for Cohan and was under no obligation to transfer it to him. It might have sold to another and furnished Cohan different cars from different points of shipment. It had simply bought the cars from the Continental Company and held them for resale in its business. Having orders from Cohan it passed the bills to him. We think it well settled that goods so received and held are out of interstate commerce and subject to state taxation, and whether the tax be property or excise is immaterial. *Brown v. Houston*, 114 U. S. 622, 5 Sup. Ct. 1091, 29 L. Ed. 257.

The shipments by the Continental Company to itself, under the facts here disclosed, did not convert that company from seller to purchaser, at some mythical time after the cars were loaded at Casper. Intent here governs and these were clearly shipments by the Continental to the Home Company. The latter received the gasoline

in Denver and was the first Colorado distributor to receive it. If it can escape the tax on the theory that it could not attach until the product was unloaded then the cars of gasoline might have remained in Denver for a year while title passed through countless hands by transfer of the bills of lading. In other words the contention is that transfer of the bill transfers the goods for all purposes but that of lifting them out of interstate commerce, and that this can only be accomplished by unloading the car. We find no support in authority, and certainly none in logic, for this position.

Goods in fact out of interstate commerce cannot be cloaked therewith for the purpose of escaping state taxation merely by the manipulation of bills of lading. *Superior Oil Co. v. Mississippi,* 280 U. S. 390, 50 Sup. Ct. 169, 74 L. Ed. 504.

No reason appearing from the record, suggested by the briefs or conceived by us, why a new trial would develop anything material not already here apparent, the judgment is reversed and the cause remanded with directions to enter judgment for the state.

MR. JUSTICE CAMPBELL and MR. JUSTICE HOLLAND not participating.