## Ex parte R. C. WINN.

No. A-9206.   Dec. 31, 1936.
Rehearing Denied Feb. 12, 1937.
(64 Pac. [2d] 927.)

Frank Leslie, for petitioner.

Mac Q. Williamson, Atty. Gen., and Holly L. Anderson, Co. Atty., and M. S. Simms, Asst. Co. Atty., for respondent.

EDWARDS, P. J.   This is an original proceeding in habeas corpus.   Petitioner alleges he is unlawfully restrained by the sheriff of Tulsa county.   That he was jointly charged with others in the court of common pleas of that county of three offenses, one charging him with selling cigarettes without a license, another advertising

cigarettes without stamps affixed, and another with displaying cigarettes for sale without stamps affixed, and was convicted on all of said charges; that he was fined $100 and costs on one charge, on another he was fined $25 and costs, and on the other the sum of $1 and costs, and in default of payment was committed to the county jail. That said restraint is unlawful, in that the court did not have jurisdiction; that the transaction charged and proven was interstate commerce and beyond the jurisdiction of the court.

The testimony is that C. J. Brooks, a codefendant, had a place of business at Tulsa, which he operated under the name of J. F. Anderson. Brooks, with petitioner and other codefendants, would go about soliciting orders for cigarettes. These orders would generally be written down by the solicitor and would then be taken' to Brooks' place of business; gum stickers were there prepared on which was the name and address of the person placing the order or occasionally the address without any name. Also orders were received at this place of business by telephone. Some persons had standing orders by which they received cartons of cigarettes weekly or every few days as they required. The orders were then sent from the place of business to the Pittsburg Tobacco Company, at Pittsburg, Kan., with the gum stickers, and the Pittsburg Tobacco Company would then mail the cigarettes, in cases, C. O. D. to Brooks, with the notation on the invoice, "Sold to J. F. Anderson." Brooks or some one for him would then receive the cigarettes at the post office, pay for them, together with the C. O. D. charges, and would then take them to his place of business and would there break the cases, and his employees would then take the cartons of cigarettes to those who had made orders, deliver them, and receive payment; or his customers would come in person,

receive the cigarettes, and pay for them. When Brooks delivered these cigarettes to one of his employees, the employee was charged with them. Brooks testified he disposed, in this way, of an average of 40 to 50 cartons of cigarettes a day; that each solicitor received 10 cents per carton for his compensation in procuring the order and delivering the cigarettes; and that he as manager or agency head received 3 cents per carton above the purchase price, except when he personally took the order by phone or otherwise, when he received in addition 10 cents per carton. At the time of the arrest there was on display at Brooks' place of business 213 cartons and 6 packages of cigarettes, all without any stamp evidencing the payment of sales tax as provided by article 8, chapter 66, Session Laws 1935, the cigarette Stamp Tax Act. Said act, among other things, provides for an excise tax upon all cigarettes within the state to be paid and collected by the person making the first sale thereof within the state and the payment of said tax to be evidenced by stamps purchased from the State Tax Commission, such stamps to be securely affixed to the package, and such tax to be in lieu of any and all other forms of tax. By said act it is made unlawful to sell cigarettes on which the tax provided has not been paid and to have cigarettes in packages to which stamps are not affixed evidencing payment. It is also forbidden to display or expose for sale unstamped cigarettes.

Petitioner contends he was acting as agent for the tobacco company and that his handling cigarettes was a transaction in interstate commerce and as such beyond the jurisdiction of the court. Many cases are cited which petitioner asserts support his contention. Particularly he relies on Stewart v. People of State of Michigan, 232 U. S. 665, 34 S. Ct. 476, 58 L. Ed. 786; Crenshaw v. Arkansas,

227 U. S. 389, 33 S. Ct. 294, 57 L. Ed. 565; Robbins v. Taxing District, 120 U. S. 489, 7 S. Ct. 592, 30 L. Ed. 694; Real Silk Hosiery Mills, Inc., v. Portland, 268 U. S. 325, 45 S. Ct. 525, 69 L. Ed. 982. Some of these cases, on first blush, seem to sustain his theory. It is evident Brooks had legal advice as to how he might circumvent the payment of the excise tax on cigarettes and adopted his methods as best he could to bring his handling of them within the rule of the cases cited.

On the other hand, respondent insists the facts shown clearly bring petitioner under the rule announced in the cases of Banker Bros. Co. v. Pennsylvania, 222 U. S. 210, 32 S. Ct. 38, 56 L. Ed. 168; Croy v. Obion County, 104 Tenn. 525, 58 S. W. 235, 51 L. R. A. 254, 78 Am. St. Rep. 931; People v. Home Oil & Supply Company, 95 Colo. 143, 34 Pac. (2d) 67; Sheppard et al. v. Musser (Tex. Sup.) 92 S. W. (2d) 219.

We are not disposed to go into a lengthy analysis of the authorities nor attempt to restate the applicable rules of law. If the transactions in which the procuring of the orders for cigarettes by petitioner and his codefendants, and the delivery of the orders to Brooks at his place of business and the filling the orders by mail, parcel post, C. O. D., the receiving of the cigarettes, the breaking of the cases, and the turning over of the cartons to petitioner and his codefendants or other employees, and the delivery to those placing the orders, is a transaction in interstate commerce, the court did not have jurisdiction to render judgment. If, on the other hand, upon the receipt of the shipment by Brooks and his payment of the C. O. D. charges, and the removing the same to his place of business, the cigarettes had come to rest within the state and the subsequent delivery and the receiving of payment for

them from purchasers was a first sale within the state, that is to say, was intrastate commerce, then the judgment is valid.

It is true the motive which prompted Brooks in his method of dealing in cigarettes is not material if his business was in fact wholly interstate commerce, but as was stated in People v. Home Oil & Supply Co., 95 Colo. 143, 34 Pac. (2d) 67, 68,

"The intent of the person making the shipment has an important, if not controlling, bearing upon the question of where the interstate journey ends. Texas & N. O. R. R. Co. v. Sabine Tram Co., 227 U. S. 111, 33 S. Ct. 229, 57 L. Ed. 442."

Surely when the tobacco company in Kansas sent cigarettes by C. O. D. mail to Brooks in Oklahoma and he paid the C. O. D. charges and took them to his place of business, the delivery was complete. The tobacco company had no further interest in them and the interstate transaction was at end. The cigarettes had come to rest in Oklahoma. They were the property of Brooks and they were subject to the excise laws of this state. Any sale of them after that time was intrastate business and was subject to the laws of this state.

The writ is denied.

DAVENPORT and DOYLE, JJ., concur.