# CRENSHAW v. STATE OF ARKANSAS.

# GANNAWAY v. SAME.

ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

Nos. 127, 128.    Argued January 20, 21, 1913.—Decided February 24, 1913.

The negotiation of sales of goods which are in another State, for the purpose of introducing them in the State in which the negotiation is made, is interstate commerce. *Robbins v. Shelby County Taxing District,* 120 U. S. 489.

The police power of a State cannot obstruct foreign or interstate

commerce beyond the necessity for its exercise; nor can objects not within its scope be secured under color of the police power at the expense of the protection afforded by the Federal Constitution. *Railroad Co.* v. *Husen*, 95 U. S. 465.

While a tax on peddlers who sell and forthwith deliver goods is within the police power of the State, a tax on one who travels and solicits orders for goods to be shipped from without the State is a burden on interstate commerce and unconstitutional. *Emert.* v. *Missouri*, 156 U. S. 296, distinguished.

Peddlers, at common law, and under those statutes regulating them which have been sustained, are such as travel from place to place selling goods carried with them, and not such as take orders for delivery of goods to be shipped in the course of commerce.

This court in dealing with rights created and conserved by the Federal Constitution looks to the substance of things and not the names by which they are labeled.

A State cannot, by defining a business subject to its own police power as including a class which is not subject to that power, deprive such class of rights protected by the Federal Constitution.

A state statute, imposing a license on those who solicit orders, from samples which they do not sell, of articles to be shipped from another State and which are afterwards delivered to the purchaser by the manufacturer, is an unconstitutional burden on interstate commerce beyond the police power of the State, and cannot be justified as a license tax on peddlers even though the state statute defines the persons soliciting the orders as peddlers; and so *held* as to the law of Arkansas of April 1, 1909, regulating the sale of certain specified articles within the State.

95 Arkansas, 464, reversed.

THE facts, which involve the constitutionality under the commerce clause of the Federal Constitution of a law of the State of Arkansas imposing a license on persons making sales within that State as applied to articles delivered from other States, are stated in the opinion.

*Mr. J. Merrick Moore* for plaintiff in error:[1]

The act of Arkansas of 1909 in so far as it applies to the business engaged in by plaintiff in error is an unauthorized

---

[1] See also argument for plaintiff in error in *Rogers* v. *Arkansas*, *post*, p. 402.

regulation of interstate commerce, and as such is in conflict with Art. I, § 8, of the Constitution of the United States. *Brown* v. *Maryland*, 12 Wheat. 419; *Robbins* v. *Shelby Co. Taxing Dist.*, 120 U. S. 489; *Leloup* v. *Port of Mobile*, 127 U. S. 640; *Asher* v. *Texas*, 128 U. S. 129; *Leisy* v. *Hardin*, 135 U. S. 100; *Brennan* v. *Titusville*, 153 U. S. 289; *Stockard* v. *Morgan*, 183 U. S. 27; *Caldwell* v. *North Carolina*, 187 U. S. 632; *Rearick* v. *Pennsylvania*, 203 U. S. 507; *Dozier* v. *Alabama*, 218 U. S. 124.

It is immaterial whether the act of Arkansas of 1909 be intended as a regulation of peddling, and not as a regulation or license upon soliciting orders; or whether it be regarded as a police or a revenue measure. *Brown* v. *Maryland*, 12 Wheat. 419, 444; *Robbins* v. *Shelby Co. Taxing Dist.*, 120 U. S. 489; *Leloup* v. *Port of Mobile*, 127 U. S. 640; *Brennan* v. *Titusville*, 153 U. S. 289; *West. Un. Tel. Co.* v. *State*, 82 Arkansas, 314, 315; *Welton* v. *Missouri*, 91 U. S. 275; *Crutcher* v. *Kentucky*, 141 U. S. 47.

It is immaterial whether the contract of sale of the goods ordered be executed in the State where the purchaser resides, or in the State from which the goods are shipped; and it is immaterial where title to the goods passes. *Rearick* v. *Pennsylvania*, 203 U. S. 507; *Dozier* v. *Alabama*, 218 U. S. 124; *Caldwell* v. *North Carolina*, 187 U. S. 632; *Brennan* v. *Titusville*, 153 U. S. 289.

*Mr. William H. Rector*, with whom *Mr. Hal L. Norwood*, Attorney General of Arkansas, *Mr. T. M. Mehaffy* and *Mr. Charles C. Reid* were on the brief, for defendants in error: [1]

The Supreme Court of Arkansas has construed the act of 1909 as an exercise of the police power inherent in the State—that construction is conclusive upon this court. *Barnhill* v. *State*, 144 S. W. Rep. (Ark.) 211; *Pabst Brew-*

---

[1] See also abstract of argument in *Rogers* v. *Arkansas, post,* p. 405.

*ing Co.* v. *Crenshaw,* 198 U. S. 17; *Cargill Co.* v. *Minnesota,* 180 U. S. 452; *Delamater* v. *South Dakota,* 205 U. S. 93; *Atlantic Coast Line* v. *Mazursky,* 216 U. S. 122; *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322; *Armour Packing Co.* v. *Lacey,* 200 U. S. 226; *Kahrer* v. *Stewart,* 197 U. S. 60; *Pullman Co.* v. *Adams,* 189 U. S. 426; *Osborne* v. *Florida,* 164 U. S. 650.

The Peddling Act of 1909 as applied to the facts in this case is in no just sense a regulation of interstate commerce, but is a rightful and proper exercise of the police power inherent in the State and is neither arbitrary, unreasonable nor contrary to Art. I, § 8, of the Constitution of the United States. *Sherlock* v. *Alling,* 93 U. S. 99; *Crutcher* v. *Kentucky,* 141 U. S. 47; *Nashville &c. Ry. Co.* v. *Alabama,* 128 U. S. 96; *Chi., Mil. &c. Ry. Co.* v. *Solan,* 169 U. S. 133; *Hennington* v. *Georgia,* 163 U. S. 299; *L. S. & M. S. Ry. Co.* v. *Ohio,* 133 U. S. 286; *West. Un. Tel. Co.* v. *Kansas,* 216 U. S. 27; *Asbell* v. *Kansas,* 209 U. S. 251; *M., K. & T. Ry. Co.* v. *Haber,* 169 U. S. 613; *G., C. & S. F. Ry. Co.* v. *Hefley,* 158 U. S. 98; *C., R. I. & P. Ry. Co.* v. *Arkansas,* 219 U. S. 126; *Emert* v. *Missouri,* 156 U. S. 298; *Allen* v. *Riley,* 203 U. S. 347; *Woods* v. *Karl,* 203 U. S. 358; *Ozan Lumber Co.* v. *Union County Bank,* 207 U. S. 251.

This case can be clearly distinguished from the cases cited by plaintiff in error.

MR. JUSTICE DAY delivered the opinion of the court.

The plaintiffs in error were convicted under a law of the State of Arkansas approved April 1, 1909 (Act 97, Acts of 1909, p. 292), undertaking to regulate the sale of lightning rods, steel stove ranges, clocks, pumps, and vehicles in the several counties of the State. The judgment of conviction was affirmed, 95 Arkansas, 464, and the case is here upon questions arising under the Federal Constitution.

The act provides:

"Section 1. That hereafter before any person, either as owner, manufacturer or agent, shall travel over and through any County and peddle or sell any lightning rod, steel stove range, clock, pump, buggy, carriage or other vehicle or either of said articles, he shall procure a license as hereinafter provided from the County Clerk of such County, authorizing such person to conduct such business.

"Section 2. That before any person shall travel over or through any County and peddle or sell any of the articles mentioned above he shall pay into the County Treasury of such County the sum of Two Hundred ($200) Dollars, taking the receipt of the Treasurer therefor, which receipt shall state for what purpose the money was paid. The County Clerk of such County upon the presentation of such receipt shall take up the same and issue to such person a certificate or license, authorizing such person to travel over such County and sell such articles or article for a period of one year from the first day of January preceding the date of such license.

"Section 3. Any person who shall travel over or through any County in this State and peddle or sell, or offer to peddle or sell any of the above enumerated articles without first procuring the license herein provided for shall be deemed guilty of a misdemeanor and upon conviction shall be fined in any sum not less than two hundred ($200) dollars nor more than five hundred ($500) dollars.

"Section 4. That any person who shall travel over or through any County in this State and peddle or sell any of the articles mentioned above, shall be deemed and held to be a peddler, under the provisions of this Act."

The case was considered upon an agreed statement of facts, of which the following is an abridgment:

The Range Company, a corporation organized under the laws of Missouri with its principal offices and factory

at St. Louis, manufactures ranges which are sold by traveling salesmen in the United States, and among other places in the counties of Arkansas.  The business is conducted in Union and other counties in Arkansas as follows: R. L. Sutton, an employé of the Range Company and division superintendent, has general supervision of the company's business in that district, with four other employés, two known as sample men or salesmen and two as delivery men, under his direction.  The employés are paid stipulated compensation for their services, and none of them has any financial or monetary interest in the property of the company in Union county or in the sales or proceeds of sales made by them in that county or elsewhere in Arkansas other than the compensation above referred to. The salesmen are furnished with a sample range, and a wagon and team, and are sent into such territory in Union or other counties of Arkansas as may be designated by Sutton to solicit orders for ranges.  Where orders are taken the purchaser signs a note providing for the payment of the purchase price.  The note or order contains a stipulation that it shall be void as against the purchaser in the event the company fails to deliver the range ordered within sixty days from date.  All orders so taken are forwarded to Sutton, who investigates the credit of the purchasers, and, if found satisfactory, proceeds to have the orders filled within the sixty days' limit.  Deliveries are made through or by the employés of the company known as delivery men, each of whom is furnished with a delivery wagon and team by the company for that purpose.  The ranges, wagons and teams are the property of the company.  The sample ranges entrusted to the salesmen by the company are not sold by them.  Under no circumstances do the salesmen deliver to the purchasers the ranges for which orders are taken; under no circumstances do the delivery men sell or offer to sell or take orders for ranges or deliver any ranges other than those

for which orders have previously been taken by the salesmen. All ranges ordered and manufactured are shipped in carload lots to Union and other counties, each car containing sixty separate ranges and being consigned by the company to itself in care of Sutton, its employé. At the end of each month Sutton settles with the company's employés, salesmen and delivery men and sends their reports and his own report to the company, together with all notes taken by the salesmen during the month, and all cash in hand over $500, which amount is retained as expense money.

A carload of ranges was thus shipped from St. Louis to Eldorado, Arkansas, for the purpose of filling orders previously secured by the soliciting agents or traveling salesmen. Upon the arrival of the car at Eldorado the ranges were taken therefrom, loaded on delivery wagons and delivered by the delivery men to purchasers in the precise shape, form, condition and packages in which they were delivered to the common carrier at St. Louis.

It was agreed that Gannaway was a salesman of the Range Company and had exhibited sample ranges and solicited and taken orders and secured notes for them, and that Crenshaw acted as a delivery man and delivered ranges to parties in Union county, who had previously given orders to salesmen.

This law is attacked and the conviction of Crenshaw and Gannaway alleged to be unlawful because, among other reasons, the law imposes a direct burden upon interstate commerce, exclusively within Federal control, and therefore beyond the power of the State to regulate. Under the facts which we have stated and upon which the court below decided the case, we think the law applicable to the present situation is well settled by previous decisions of this court.

The leading case is *Robbins v. Shelby County Taxing District*, 120 U. S. 489, in which it was undertaken in the

State of Tennessee to impose by statute a license tax upon drummers and persons not having a regular, licensed house of business in the taxing district, offering to sell or selling goods, wares or merchandise by sample. Robbins was a resident of Cincinnati, Ohio, and was convicted of having offered for sale articles of merchandise belonging to a firm in Cincinnati to be shipped into Tennessee, without having secured the license required by statute. In that case, while this court recognized the power of the State to pass inspection laws to secure the due quality and measure of products and commodities and laws to regulate or restrict the sale of articles deemed injurious to the health or morals, the principle was laid down (p. 497) that "the negotiation of sales of goods which are in another State, for the purpose of introducing them into the State in which the negotiation is made, is interstate commerce," and it was held beyond the power of the State to impose a license tax upon the privilege of conducting such business. That case has been strictly adhered to in this court since its decision, and it is only necessary to notice a few of the many cases in which it has been applied.

In *Brennan* v. *Titusville*, 153 U. S. 289, an ordinance of the State of Pennsylvania was held invalid as imposing a tax on interstate commerce, where the tax was sought to be imposed upon a manufacturer of pictures residing in Chicago, having his factory and place of business there, whose agents solicited orders in Pennsylvania and other States by going personally from house to house with samples of pictures and frames. Upon the receipt of the orders they were forwarded to Chicago, where the goods were made and whence they were shipped to the purchasers in Pennsylvania and elsewhere. This court reviewed the previous cases at length and, in the course of the discussion, said (p. 302):

"Even if it be that we are concluded by the opinion of the Supreme Court of the State that this ordinance was

enacted in the exercise of the police power, we are still confronted with the difficult question as to how far an act held to be a police regulation, but which in fact affects interstate commerce, can be sustained. It is undoubtedly true that there are many police regulations which do affect interstate commerce, but which have been and will be sustained as clearly within the power of the State; but we think it must be considered, in view of a long line of decisions, that it is settled that nothing which is a direct burden upon interstate commerce can be imposed by the State without the assent of Congress, and that the silence of Congress in respect to any matter of interstate commerce is equivalent to a declaration on its part that it should be absolutely free."

In *Caldwell* v. *North Carolina*, 187 U. S. 622, a taxing ordinance of the city of Greensboro was held invalid as an unlawful interference with interstate commerce, where a portrait company engaged in making pictures and frames in Chicago sold them upon orders solicited in North Carolina, shipping the pictures and frames in separate packages to its own agent, who placed the pictures in their proper frames and delivered them to the persons ordering them. This was held to be a transaction in interstate commerce and beyond the taxing power of the State, and it was held to make no difference that the pictures and frames were shipped to the company itself at Greensboro, where the agent of the company received them from the railroad at its depot, carried them to his room in Greensboro, opened the packages, took out and assorted them and put them together and in this form delivered them to the purchasers in the city of Greensboro, who had previously ordered them. Of this feature of the case, which had been held in the Supreme Court of North Carolina to differentiate the case from the former cases, this court said (p. 632):

"Nor does the fact that these articles were not shipped

separately and directly to each individual purchaser, but were sent to an agent of the vendor at Greensboro, who delivered them to the purchasers, deprive the transaction of its character as interstate commerce. It was only that the vendor used two instead of one agency in the delivery. It would seem evident that, if the vendor had sent the articles by an express company, which should collect on delivery, such a mode of delivery would not have subjected the transaction to state taxation."

In *Rearick* v. *Pennsylvania*, 203 U. S. 507, an ordinance of the Borough of Sunbury in the State of Pennsylvania was held invalid which undertook to make it unlawful to solicit on the streets or by traveling from house to house, orders for the sale or delivery at retail, of foreign or domestic goods not of the parties' own manufacture or production without a license, for which a fee was charged. It was undertaken in that case to apply the ordinance to Rearick, who solicited orders for brooms which were shipped from Columbus, Ohio, to fill the orders solicited, the brooms being tagged and marked according to the number ordered, and tied together in bundles of about a dozen for shipment. It was held that the brooms were specifically appropriated to the keeping of contracts the fulfilling of which required the transportation of the brooms for delivery in interstate commerce.

In *Dozier* v. *Alabama*, 218 U. S. 124, where pictures were sold to be transported and delivered in interstate commerce and at the time they were ordered an option was taken fixing the specific price of a frame in which the picture was to be delivered, both picture and frame being manufactured in another State and to remain the property of the vendor until sold, the sale of the frame was held to be part of a transaction protected by the commerce clause of the Constitution, although the purchasers were not bound to take the frames unless they saw fit. Applying the previous cases, this court held the license tax for

soliciting orders for the pictures and frames could not be applied to persons taking such orders to be fulfilled by shipments from another State which constituted inter-state commerce and which could not be taxed under the law of the State.

Nor does the fact that the law now in question was alleged to have been passed in the exercise of the police power of the State make it lawful. In *Railroad Co.* v. *Husen*, 95 U. S. 465, 473, this court said that "the police power of a State cannot obstruct foreign commerce or interstate commerce beyond the necessity for its exer-cise; and under color of it objects not within its scope cannot be secured at the expense of the protection afforded by the Federal Constitution." To the same effect, *Walling* v. *Michigan*, 116 U. S. 446, 460; *Leisy* v. *Hardin*, 135 U. S. 100, 108; *Brennan* v. *Titusville*, 153 U. S. 289, 302, 303.

In the opinion delivered for the majority of the Supreme Court of Arkansas, the law in question was upheld, not-withstanding the decisions of this court, which were recognized, because of the distinguishing feature of the ordinance as a valid exercise of the police power of the State in taxing the occupation of peddling, and to sustain that conclusion *Emert* v. *Missouri*, 156 U. S. 296, was relied upon. In that case a tax upon peddlers within the State of Missouri by a statute of the State by which peddlers of goods going from place to place in the State were required to take out a license, was sustained. The cases were fully considered by Mr. Justice Gray, who delivered the opinion of the court, and the right to tax peddlers from early times in England and America was stated, and a history of much of the legislation given. The law was sustained as against the contention that it violated the interstate commerce clause of the Constitu-tion, because it was shown that Emert, who was convicted, carried the machines with him in a wagon, and upon mak-

ing a sale delivered the machine to the purchaser.   He was not merely soliciting orders for machines, but selling and delivering them.   Upon this ground the Supreme Court of Missouri and this court placed its decision (p. 310), and Mr. Justice Gray said (p. 311):

"The defendant's occupation was offering for sale and selling sewing machines, by going from place to place in the State of Missouri, in a wagon, without a license. There is nothing in the case to show that he ever offered for sale any machine that he did not have with him at the time.   His dealings were neither accompanied nor followed by any transfer of goods, or of any order for their transfer, from one State to another; and were neither interstate commerce in themselves, nor were they in any way directly connected with such commerce."

In the *Emert Case*, therefore, there was no movement of goods in interstate commerce because of orders taken for their sale, but the specific articles carried about by the peddler, and none other, were sold and delivered by him. In the majority opinion of the Supreme Court of Arkansas the definition of hawkers and peddlers as understood at common law was recognized—as one who goes from house to house or place to place carrying his merchandise with him which he concurrently sells and delivers, 2 Bouvier, 642—but it was said that the legislature of Arkansas might define the word peddlers so as to include such as traveled from place to place and took orders for goods from other States and that such persons, because of the statute declaring them so, were peddlers and liable to be taxed under the lawful exercise of the police power of the State.   We must look, however, to the substance of things, not the names by which they are labelled, particularly in dealing with rights created and conserved by the Federal Constitution and finding their ultimate protection in the decisions of this court.   At common law and under the statutes which have been sustained concerning peddlers

they are such as travel from place to place selling the goods carried about with them, not such as take orders for the delivery of goods to be shipped in the course of commerce. Here, as the facts show, the sample ranges carried about from place to place are not sold. Orders are taken and transmitted to the manufacturer in another State for ranges to be delivered in fulfillment of such orders, which are in fact shipped in interstate commerce and delivered to the persons who ordered them. Business of this character, as well settled by the decisions of this court, constitutes interstate commerce, and the privilege of doing it cannot be taxed by the State.

It follows that the judgments of the Supreme Court of Arkansas must be reversed and the cases remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed.*