## STEWART *v.* PEOPLE OF THE STATE OF MICHIGAN.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 239.    Argued March 6, 1914.—Decided March 23, 1914.

*Crenshaw* v. *Arkansas*, 227 U. S. 389, followed to effect that the negotiation of sales of goods which are in another State, for the purpose of introducing them into the State in which the negotiation is made, is interstate commerce.

Where one has been convicted for violating a state statute which is unconstitutional as applied to the act committed, the conviction cannot be sustained because there was proof of another violation with which he was not charged, as conviction for the latter would be condemnation without hearing which would be denial of due process of law.

167 Michigan, 417, reversed.

THE facts, which involve the validity under the commerce clause of the Federal Constitution of a conviction under the peddling and hawking license act of Michigan, are stated in the opinion.

*Mr. George M. Valentine* and *Mr. G. W. Bridgman* for plaintiff in error, submitted:

Section 8 of Art. I and § 2 of Art. IV of the Constitu-

tion are to be liberally construed for the benefit of the States and their citizens.

The authority of Congress in this regard is exclusive, and no State, except in the exercise of the police power for the security of the lives, health, and comfort of persons and the protection of property, can make any law or regulation which will affect the free and unrestrained intercourse and trade between the States as the Federal Constitution left it, or which will impose any discriminating burden or tax upon the citizens or products of other States coming or brought within its jurisdiction.

The state court erred in holding the transactions to be domestic commerce, simply because plaintiff in error caused the goods for which he had taken orders to be consigned to himself in the State of Michigan, with no mark upon any of the goods to indicate that they were to fill any particular order or that they were for any particular person. See *Asher* v. *Texas*, 128 U. S. 129; *Robbins* v. *Shelby Taxing District*, 120 U. S. 489; *Brennan* v. *Titusville*, 153 U. S. 289; *Caldwell* v. *North Carolina*, 187 U. S. 622; *Rearick* v. *Pennsylvania*, 203 U. S. 507; *Dozier* v. *Alabama*, 219 U. S. 124; *Crenshaw* v. *Arkansas*, 227 U. S. 389; Dillon on Mun. Corp., 5th ed., p. 2328, § 1356.

Importation of goods from outside the State as ordered by purchasers is an act of interstate commerce, although the goods are shipped to a general agent in the State, who re-packs them and sends them to subordinate agents, who deliver them to the purchasers. *Huntington* v. *Mahan*, 142 Indiana, 695; *Bloomington* v. *Bourland*, 137 Illinois, 534; *McLaughlin* v. *South Bend*, 126 Indiana, 471; *Martin* v. *Rosedale*, 130 Indiana, 109; *Carstairs* v. *O'Donnell*, 154 Massachusetts, 357; *People* v. *Bunker*, 128 Michigan, 160; *Stone* v. *State*, 117 Georgia, 292; *Turner* v. *State*, 41 Tex. Crim. Rep. 545; *In re Spain*, 47 Fed. Rep. 208; *South Bend* v. *Glasby*, 50 Washington, 598.

*Mr. Grant Fellows,* Attorney General of the State of Michigan, for defendant in error.

Mr. Chief-Justice White delivered the opinion of the court.

Plaintiff in error was tried and convicted in a Justice Court upon a criminal information which charged that "one David J. Stewart did travel from place to place within the County of Berrien, State of Michigan, for the purpose of taking orders for the purchase of goods, wares and merchandise, by sample, lists and catalogues, without having then and there obtained a license as a hawker and peddler as required and provided by chapter 136 of the compiled laws of Michigan, of 1897, as amended." From that judgment an appeal was taken to the county court where the cause was tried *de novo* by a jury, resulting again in a conviction, and that judgment was affirmed by the Supreme Court of the State (167 Michigan, 417). This writ of error was then prosecuted.

There are several assignments of error of a Federal nature, but the consideration of one—the asserted repugnancy of the statute upon which the warrant was based to the commerce clause of the Constitution of the United States—will enable us to dispose of the case. The statute provides:

"No person shall be authorized to travel from place to place within this state, for the purpose of carrying to sell or exposing to sale any goods, wares, or merchandise, or to take orders for the purchase of goods, wares, or merchandise, by sample list or catalogues, unless he shall have obtained a license as a hawker and peddler in the manner hereinafter directed."

Violation of the statute was made a misdemeanor punishable by fine or imprisonment.

Briefly stated, the material facts, which are uncontro-

verted, are as follows: The defendant resided in the City of Chicago where he was engaged in the general merchandise business, but much of his time was spent in the State of Michigan soliciting orders for groceries and other merchandise to be shipped from his Chicago store. Duplicates of the orders secured were mailed by him to his manager in Chicago, and goods corresponding to the orders were shipped in carload lots from the Chicago store consigned to the defendant at St. Joseph and other points in Berrien County, Michigan. Upon the arrival of the cars at St. Joseph the goods were delivered to the customers by draymen employed by the defendant, who filled the orders at the car by checking from the original orders, there being no identifying marks on the packages, except as to their contents. Customers living at a distance received notice by mail of the arrival of the cars and called or sent for their goods. If for any reason any orders were undelivered, the goods corresponding to such orders were returned to the Chicago store or placed in a storeroom which the defendant hired in Benton Harbor, Michigan, and there is some evidence tending to show that occasional sales were made by the defendant from the storeroom and from the car without previous solicitation.

Upon the above facts the trial court charged the jury as follows:

"In this case it is claimed by the defendant that he was engaged in interstate commerce and that he was protected by the Interstate Commerce Law.

"Now, it is true that a wholesale merchant or grocer, in the City of Chicago for instance, can solicit orders through an agent in this state and he can send an agent here to deliver the goods.

"The facts, however, in this case are different. The goods were shipped here in a car consigned to the defendant himself. The goods were never consigned to the man who made the order, and when they got here they were

not the goods of the man who made the order because if, any of those men who had made an order had gone down to the car they could not have claimed the goods that were there because they could not be identified. The packages were mixed promiscuously in boxes and there were no names on the packages. Moreover, those goods were not shipped according to the usual course of business, promptly, but there was a delay of some two or three months in the shipment of those wares.

"I hold, gentlemen, that there was no sale ever consummated until the goods were actually delivered by the drayman at the house. Ordinarily the sale is consummated at Chicago (where goods are ordered from Chicago) and the sale is consummated the moment they are shipped at the City of Chicago, directed to the consignee. In this case no sale was consummated whatever until the goods were actually delivered at the house.

"So I hold, practically, that the car was a mere warehouse or place of doing business by the defendant, and it was there that he distributed the goods as he pleased. For that reason, gentlemen, I hold that the defendant comes within the law and that he is what is called a hawker and peddler.

\* \* \* \* \* \* \* \*

"In this case, as it is only a matter of law, and there are no facts in dispute, it will be your duty of course, as a matter of form, to follow the direction of the court, I find, gentlemen of the jury, in this case that the defendant, under the evidence and the law, is guilty of the charge. . . ."

And the correctness of the charge thus given was in terms sustained by the Supreme Court of the State in its opinion.

The charge as thus given and affirmed is clearly in conflict with the rule announced in *Crenshaw* v. *Arkansas,* 227 U. S. 389, and the cases there reviewed. Indeed,

reference to authority is unnecessary, since it was admitted
in the argument at bar that the judgment below in so far
as it affirmed the action of the trial court in holding that
there could be a conviction because of the deliveries of
merchandise from the cars to fill orders previously solicited
and obtained was erroneous because in conflict with the
commerce clause of the Constitution. But it is said al-
though there was manifestly reversible error from this
point of view, nevertheless as from another point of view
there was a ground adequate to sustain the judgment,
there should be an affirmance. The court below it is said,
not only placed its affirmance upon the erroneous ruling
as to the sales made under orders, but also upon the ground
that there was evidence showing some sales made from
the car or store-room not under previous orders and as
the latter sales were not within the shelter of the commerce
clause, therefore the affirmance on that ground was an
independent non-Federal conclusion sustaining the action
of the court and calling for the duty of affirmance. But
this proposition disregards the fact that the only charge
made against the accused was for peddling and that the
instructions of the court and the whole course of the trial
conclusively established that the sales made from the car,
as the result of the orders solicited, formed the sole basis
for the prosecution, and the conviction therefore related
to that and to that alone. If then it be admitted that the
judgment below was placed upon two grounds, such ad-
mission would not establish that the judgment rested
upon an independent state ground adequate to sustain it,
since the first ground it is admitted was Federal and er-
roneous, and the second ground if upheld would amount
to a condemnation without hearing and therefore consti-
tute a denial of due process of law. Thus the proposition
if sustained would require us to hold that an admitted
violation of one constitutional right must be left uncor-
rected because at the same time another and equally

fundamental constitutional right was disregarded, a conclusion which would give effect to both wrongs obviously demonstrates our plain duty to reverse and remand for further proceedings not inconsistent with this opinion.

*Reversed.*