GRAND UNION TEA CO. v. EVANS, Dist. Atty. of Multnomah County, et al.

(District Court, D. Oregon. August 17, 1914.)

No. 6261.

1. INJUNCTION (§ 85*)—STATE STATUTE—ENFORCEMENT—CRIMINAL OFFENSE.
    A court of equity has jurisdiction of a suit to enjoin state officers from threatened enforcement of a state peddlers law, as against transactions constituting interstate commerce, and affecting complainant's property rights, though the violation of the law is punishable as a criminal offense.
    [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 155, 156; Dec. Dig. § 85.*]

2. INJUNCTION (§ 118*)—ENFORCEMENT OF PEDDLERS LAW—INTERSTATE COMMERCE—RELATION BETWEEN COMPLAINANT AND REPRESENTATIVES.
    Where complainant employed many representatives in Oregon to sell its goods in interstate commerce, adopting several methods to secure itself from loss, such as requiring bonds from agents, shipping goods to them C. O. D.; requiring agents to pay drafts attached to bills of lading, or to establish a credit with complainant, etc., a bill to restrain the enforcement of the Oregon Peddlers Law (Laws 1909, p. 386) against complainant and its agents, alleging that complainant's solicitors are its agents and representatives receiving orders for it and not for themselves, and that the goods handled by them remain and are complainant's property until delivered to the customer, sufficiently alleged that the relation between complainant and its solicitors was that of principal and agent, and not that of buyer and seller so as to deprive complainant of capacity to sue.
    [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 223–242; Dec. Dig. § 118.*]

3. COMMERCE (§ 40*)—INTERSTATE COMMERCE—PEDDLERS LAW.
    Complainant, a New Jersey corporation, was engaged in selling goods packed and labeled for it in New York, from which place they were forwarded by complainant for sale and distribution to various parts of the Union. Complainant maintained a store in Portland where a small part

of its merchandise was sold at retail, but the principal part of its business was done through solicitors who took orders for future delivery, which were sent to the store, where they were filled and the goods shipped to or delivered to the solicitors, who delivered the same to the customers, and collected the price on their next trip over their respective routes. The agents were not permitted to sell goods at retail from their wagons, or in any other manner than by taking orders for future delivery, and all goods not accepted by customers were returned to the store. All of the goods shipped to agents were shipped to and addressed to the company, in care of the agent, and remained the property of the company until actually delivered. The Portland store did not keep a stock of goods with which to fill orders taken by the solicitors, but orders for goods were sent to complainant each week, prior to the actual receipt of the customers' orders by the agent, but while such orders were being taken in the field and during the time the goods were in transit. *Held*, that such transactions constituted interstate commerce, and that complainant and its agents were therefore not subject to the Oregon Peddlers Law (Laws 1909, p. 386).

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30; Dec. Dig. § 40.*]

In Equity. Suit by the Grand Union Tea Company, a New Jersey corporation, against Walter H. Evans and others, officers of Multnomah, Clatsop, and Hood River counties, to restrain them from enforcing or attempting to enforce against complainant and its representatives the Oregon Peddlers Law. Decree for complainant.

Maurice B. Dean, of New York City, and John M. Gearin, of Portland, Or., for plaintiff.

Walter H. Evans, of Portland, Or., A. J. Derby, of Hood River, Or., and C. W. Mullins, of Astoria, Or., for defendants.

Before GILBERT, Circuit Judge, and WOLVERTON and BEAN, District Judges.

BEAN, District Judge. This is an application for a preliminary injunction restraining various officers of the state from enforcing or attempting to enforce, as against the plaintiff and its representatives, the Oregon Peddlers Law, upon the ground, among others that, as applied to the plaintiff, the law constitutes an unconstitutional interference with interstate commerce. An order to show cause was issued, which was answered by a motion to dismiss.

From the complaint it appears that the plaintiff is a New Jersey corporation engaged in selling goods prepared and manufactured for it by Jones Bros. Company, a New York corporation. The goods, when manufactured, are packed and marked with the label and name of the plaintiff and delivered to it at the factory, from which place they are forwarded by the plaintiff for sale and distribution to various parts of the Union. The plaintiff maintains a store in Portland where a small part of its merchandise is sold at retail over the counter, but the principal part of its business in Oregon is done through solicitors who go regularly from place to place on fixed routes soliciting and taking orders for future delivery. The orders, when taken, are sent to the Portland store by mail, or taken there personally by the solicitors, where they are filled and the goods shipped to or delivered to

the solicitors, who deliver the same to the customers and collect the purchase price on their next trip over their respective routes. The agents or solicitors are allowed a certain percentage of the original price as a commission, but are not permitted to sell goods at retail from their wagons or in any other manner than by taking orders for future delivery, and all goods not accepted by customers are returned to the store, and placed in stock for sale over the counter.

The agents or solicitors are, for convenience, divided into five classes: First, those who have given a bond to the company to save it harmless from loss for the value of goods placed in their custody for delivery. Second, those who act on a C. O. D. basis; that is, at the time the goods to fill the orders taken by them are shipped, a bill of lading with draft attached is sent to some local bank where the agent desires receipt of the goods, or sent along with the goods to the local freight office, and the agent is required to pay such draft before receiving possession of the goods. Third, those who send in with the orders taken by them cash or checks to cover the value thereof, less commission. Fourth, those who have established a credit with the company and are not required to pay for goods shipped to fill orders taken by them until they secure a second order. And, fifth, those who have deposited cash with the plaintiff as security for goods shipped to them.

All of the goods shipped to agents to fill orders previously taken are shipped to and addressed to the company in care of the agent and remain the exclusive property of the company until actually delivered to the customers, and all cards, memoranda, or information concerning the customers along the various routes belong to the plaintiff, and the agents or solicitors are required to deliver the same to the plaintiff upon the termination of their relation with it.

The Portland store does not keep a stock of goods on hand with which to fill orders taken by the solicitors, but experience has shown the manager thereof about how many orders will come in each day and each week in the usual course of trade, and in order to fill the continually recurring orders, he will anticipate, by a few days only, the procurement of goods sufficient to fill such orders by ordering them from places outside of the state. Goods not of a perishable nature, such as soap and baking powder, are sent from the home office by water to Portland. These goods are, to some extent, kept in stock, but the orders of the Portland store are not greater than may be received in car load lots and as are necessary to fill the constantly recurring orders. Practically all the other goods, such as teas, coffees, chocolates, cocoas, etc., are ordered from Seattle in the state of Washington in no greater amounts than necessary to fill the recurring orders received in the usual course of trade, and so as to match orders which are being taken when the goods to fill them are in transit. The course of business being as follows: The manager of the Portland store makes up his orders for shipment on Friday or Saturday to send to Seattle on the following Monday. The goods arrive at Portland on Friday or Saturday of the same week they are ordered, and are used to fill the orders which the solicitors send in

to the store the following week, but which were taken by them the same week the goods were ordered from Seattle, or the preceding week. The goods do not arrive at the store until after the orders from customers have actually been taken and probably one-half thereof actually received by the store manager. When received, the goods are in the usual packing cases, cartons or parcels, and are unpacked in the basement of the store or wareroom in the rear of the store, and are kept separate and apart from goods for local sale, except teas and coffees, which are kept in the main store for cleanliness and convenience. Orders from the several agents when received are filled from the packing boxes in the basement of the store by employés who do nothing else but fill orders, except that the orders for tea and coffee are taken from the main store. At all times the goods are constantly in transit from the time they are shipped by the plaintiff at its home office until they are in the hands of the customers along the various routes, and remain no longer in the Portland store than necessary to match up orders which are coming in from continually recurring sources along well-defined and certain routes. In every case, with the possible exception of soap and baking powder, which is only a small part of the gross business of the plaintiff, the goods when the orders are taken are without the state.

The motion to dismiss is based on three grounds: (1) That a court of equity is without jurisdiction; (2) that the relation between the plaintiff and its various solicitors is that of vendor and vendee and not principal and agent, and therefore the plaintiff is not the proper party to this suit; (3) that the plaintiff is not engaged in interstate commerce, and therefore its agents or solicitors are subject to the provisions of the Peddlers Act.

[1] The first question is disposed of by the recent case of Little v. Tanner (D. C.) 208 Fed. 605, in which it was held that a court of equity has jurisdiction of a suit enjoining state officers from threatened enforcement of a void statute which affects property rights, although its violation is punishable as a criminal offense. See, also, Adams Express Co. v. N. Y., 232 U. S. 14, 34 Sup. Ct. 203, 58 L. Ed. 483.

[2] The second question is concluded by the averment of the complaint, which for the purposes of this motion must be assumed to be true. It is clearly alleged that the solicitors are agents and representatives of the plaintiff, receiving orders for it and not for themselves; that the goods handled by them remain and are the property of the plaintiff until delivered to the customer. The method adopted to secure plaintiff from loss on account of goods handled by its agents is merely a matter of convenience, and does not change the actual relation of the parties from that of principal and agent to vendor and vendee.

[3] The general principles by which it has been determined that the taking of orders in one state for goods to be shipped from another constitutes Interstate Commerce, exclusively under federal control and not subject to the burden of state legislation, have so often been announced by the Supreme Court as "to cause them to be elemen-

tary." Browning v. Waycross, 233 U. S. 16, 34 Sup. Ct. 578, 58 L. Ed. 828, decided April 6, 1914. The sole question, therefore, in any given case, is whether the manner in which the business is carried on comes within the rules laid down. It would be a waste of time to review the cases and point out their similarity and dissimilarity to the one in hand. It is enough that in our opinion the facts stated in the complaint bring this case within Crenshaw v. Arkansas, 227 U. S. 389, 33 Sup. Ct. 294, 57 L. Ed. 565, and Stewart v. Michigan, 232 U. S. 665, 34 Sup. Ct. 476, 58 L. Ed. 786, decided March 23, 1914. The only difference, if any, between it and the Crenshaw Case is that it may be assumed, although not stated, that in the Crenshaw Case the goods were not ordered by the local representative of the vendor until the customers' orders had been received by him, while in this case the shipments were ordered prior to the actual receipt of the customers' orders by the agent, but before or while such orders were being taken in the field and during the time the goods were in transit. This, we take it, does not affect the character of the business. It was a mere matter of detail in the manner of conducting it.

We conclude, therefore, that the plaintiff was engaged in Interstate Commerce, and therefore the Peddlers Act does not apply to its business.

Injunction will issue.