## City of Harrisburg v. Rice.

*Constitutional law — Interstate commerce — Regulation—Municipal ordinance—Magazines—Subscriptions—Solicitation by house-to-house canvass—Premium with subscriptions.*

1. The solicitation from house to house of subscriptions to a magazine which is published in another state and distributed by mail, where the solicitor sends the subscription to the home office for completion of the contract, is a transaction in interstate commerce.

2. The fact that the solicitor has been furnished with copies of a book which he gives as a premium to subscribers does not change the character of the business so as to render him subject to a municipal ordinance taxing "agents or canvassers for books, periodicals or other publications."

3. Where it appears that such a solicitor has not sold or distributed the book, except as a premium with a new subscription to the magazine, he has been engaged in interstate commerce and is not liable for the payment of a fine for the violation of a municipal ordinance.

Appeal from summary conviction. Q. S. Dauphin Co., Jan. Sess., 1922, No. 247.

*John R. Geyer*, City Solicitor, for plaintiff.

*Daniel H. Kunkel* and *Howard W. Bingaman*, for defendant.

HARGEST, P. J., Jan. 31, 1923.—This case arises upon an appeal to the Quarter Sessions from what appears to be a summary conviction, although the action is brought in the name of the City of Harrisburg and not in the name of the Commonwealth. We find the facts to be as follows:

1. E. A. Rice was the local agent of the Magazine Circulation Company, a foreign corporation of the State of Maine, with its principal place of business in Chicago, Illinois.

2. The Magazine Circulation Company publishes weekly a nineteen-page magazine called "Woman's Weekly Magazine," which it sells at ten cents per copy. The annual subscription price is $5.30 for fifty-three copies.

3. This company also publishes a quarto size book of 112 pages called "Home Arts and Entertainment," which contains instructions for fancy work, rules for the preparation of food and general information of interest to a housewife. It also contains a large number of highly-colored illustrations. The book and the magazine are printed on paper of the same size and quality.

4. When the defendant came to Harrisburg he brought with him about 200 of the books, which had been previously sent to him from Chicago. He left these books in his room when he went out to canvass.

5. His business was to solicit subscriptions to the magazine. The method of solicitation was as follows: He took with him a number of copies of the magazine and from six to twenty copies of the book, depending on whether he was canvassing in the city or the suburbs. A house-to-house canvass was made, and when a subscription was obtained, fifty cents was required to pay for the first five copies of the magazine. The balance of the subscription was to be paid monthly. The subscription was sent by the defendant to the Chicago office and the magazines were to be mailed directly from the Chicago office to the subscriber. The subscriber signed a contract, which was also sent to the Chicago office. The book is not sold separately, and is given only with a subscription to the magazine. The books are not, however, generally given the renewal subscribers.

6. An ordinance of the City of Harrisburg, approved March 29, 1914, entitled "An ordinance to authorize and regulate the assessment, levy and collection of a license tax on trades, occupations and various kinds of business within the City of Harrisburg, and providing penalties for the violation thereof," classifies various businesses, and provides in section 1, clause 6, as follows: "Agents or canvassers for books, periodicals or other publications shall pay an annual license tax of $10."

7. An information was made by W. D. Block, license tax officer of the City of Harrisburg, against the defendant before the Mayor of the City for the violation of this ordinance, and the Mayor adjudged the defendant guilty and imposed a sentence of $25 and costs.

8. Upon petition duly presented, an appeal was allowed to this court.

## Discussion.

It is contended that the enforcement of this ordinance against the defendant in this case puts a burden on interstate commerce and is in violation of clause 3, section 8 of article I of the Constitution of the United States, which provides that "the Congress shall have power . . . to regulate commerce with foreign nations and among the several states and with the Indian tribes."

It is thoroughly settled that taking orders in one state for goods which are in another state, to be delivered in the state where the orders are taken, is interstate commerce: Crenshaw v. Arkansas, 227 U. S. 389; Robbins v. Shelby County Taxing District, 120 U. S. 489; Brennan v. Titusville, 153 U. S. 289; Rearick v. Pennsylvania, 203 U. S. 507; Dozier v. Alabama, 218 U. S. 124; Davis v. Virginia, 236 U. S. 697; Browning v. Waycross, 233 U. S. 16.

It makes no difference whether the law which has the effect of interfering with interstate commerce is alleged to have been passed in the exercise of police power: Crenshaw v. Arkansas, 227 U. S. 389.

3 D. & C.

In Railroad Co. v. Husen, 95 U. S. 465, 473, it is said: "The police power of a state cannot obstruct foreign commerce or interstate commerce beyond the necessity for its exercise; and under color of it objects not within its scope cannot be secured at the expense of the protection afforded by the Federal Constitution:" Walling v. Michigan, 116 U. S. 446, 450; Leisy v. Hardin, 135 U. S. 100, 108; Brennan v. Titusville, 153 U. S. 289, 302, 303.

In Browning v. Waycross, 233 U. S. 16, 22, it is said that the purpose of the decisions holding that interstate commerce cannot be thus interfered with is "to prevent the recognized local limitations from being used to put the conceded interstate commerce power in a straight-jacket so as to destroy the possibilities of its being adapted to meet mere changes in the form by which business of an inherently interstate commerce character could be carried on."

So the consummation of the interstate transaction by the delivery of the goods, even though there was a performance of some duty with relation to the goods in the state of destination before delivery, could not subject the transaction to taxation in the latter state.

In Caldwell v. North Carolina, 187 U. S. 622, an ordinance of the village of Greensboro imposed a tax upon the business of selling and delivering picture frames, photographs, etc. Orders were taken for the pictures and frames, which were filled by a Chicago company, and the pictures and frames sent to Greensboro in separate packages, where Caldwell received them from the freight office, took them to a room in a hotel, fitted the pictures and frames together and then delivered them. It was held that the fitting of the frames and pictures together was but a fulfillment of the interstate order and part of the same transaction.

In Dozier v. Alabama, 218 U. S. 124, orders were taken for pictures to be made by the Chicago Crayon Company and shipped from that city. Part of the order provided: "I understand that my portrait is to be delivered in an appropriate frame, which this contract entitles me to accept at factory price." The pictures and frames were sent to the agent, and remained the property of the company until paid for and delivered. The Supreme Court of Alabama, while admitting that the dealings concerning the pictures were commerce, sustained the conviction on the ground that the sale of the frames was a wholly local matter. Notwithstanding the Supreme Court of the United States said, "No doubt it is true that the customer was not bound to take the frame unless he saw fit, and that the sale of it took place wholly within the State of Alabama, if a sale was made," it also held (page 128) : "The offer was a part of the interstate bargain, and as it was agreed that the frame should be offered 'at factory prices,' and the company and factory were in Chicago, obviously it was contemplated, if not agreed, that the frame should come on with the picture. In fact, the frames were sent on with the pictures from Chicago and were offered when the pictures were tendered as part of a transaction commercially continuous and one . . . in consideration, it is implied, of the purchase already agreed to be made. We are of opinion that the sale of the frames cannot be so separated from the rest of the dealing between the Chicago company and the Alabama purchaser as to sustain the license tax upon it."

Of course, where a part of the transaction was necessarily an exclusively local business, the parties could not by an interstate contract prevent the taxation of the local business.

In Browning v. Waycross, 233 U. S. 16, where a non-resident seller of lightning rods agreed to erect and attach the rods to the houses of the per-

sons who ordered them, it was held that the erection was an exclusively local business, subject to state control, and an occupation tax upon lightning-rod agents or dealers engaged in putting up and erecting lightning-rods could be sustained.

In the case before us we understand it to be admitted that the subscription for the magazine is an interstate transaction, but it is contended that the book having been sent in a separate package is an intrastate sale. We cannot agree with that contention. The book is never sold, but is always given as a premium for a new subscription to the magazine. We think the giving of the book is a part of the interstate transaction.

### Conclusions of law.

We, therefore, conclude:

1. That the business in which the defendant was engaged is interstate commerce, and as such is not liable to taxation under the ordinance of the City of Harrisburg above referred to.

2. The defendant is entitled to judgment.

The judgment of the Mayor of the City of Harrisburg in finding the defendant guilty is hereby reversed, and judgment is now hereby directed to be entered for the defendant and the defendant discharged.

From William Jenkins Wilcox, Harrisburg, Pa.