**BREARD v. CITY OF ALEXANDRIA et al.**

Civil Action No. 2032.

District Court, W. D. Louisiana, Alexandria Division.

Feb. 12, 1947.

T. C. McLure, Jr., of Alexandria, La., and J. Frank Wilson, of Washington, D. C., for plaintiff.

Frank H. Peterman, of Alexandria, La., for defendants.

PORTERIE, District Judge.

In the year 1930 this court enjoined the city of Alexandria from enforcing an ordinance "providing for the issuance of permits to persons engaged in soliciting orders for, or in the sale of, * * * any * * * magazine or other periodical, or any article of merchandise * * * made by canvassing from house to house," etc. Pictorial Review Co. v. City of Alexandria et al., D.C., 46 F.2d 337, 339. The issuance of the permit was very much a matter of discretion of the mayor. The opinion declared the ordinance invalid because it imposed "an unwarranted burden upon an otherwise harmless and legitimate traffic in interstate commerce."

This ordinance gave authority to the mayor to require bond with good and solvent security, in the sum of not exceeding $100 "for the use and benefit of any person or persons who may be defrauded, injured or damaged by the failure of the per-son having such permit to deliver the goods which he has taken orders for, in accordance with his agreement and understanding of his customer." There was a section providing for the revocation of the permit once granted, though bond having been furnished, and for the refusal of the reissuance of permit, and a section classifying the violation of the ordinance as a misdemeanor and providing for a penalty of not more than twenty-five dollars, or in default, jail, or both.

The city of Alexandria still impressed with the necessity of protecting its citizens in their property, morals, health and safety, passed a new ordinance—not having appealed the decision of the lower court in the first case—the main part of which reads as follows:

"Section 1. Be it ordained by the council of the City of Alexandria, Louisiana, in regular session convened, that the practice of going upon private residences in the City of Alexandria, Louisiana by solicitors, peddlers, hawkers or itinerant merchants and transient vendors of merchandise *not having been requested or invited so to do by the owner or owners,* occupant or occupants, of said private residences, for the purpose of soliciting orders for the sale of goods, wares and merchandise, and/or for the purpose of disposing of any/or peddling or hawking the same, is hereby prohibited and declared to be unlawful." (Italics ours.)

This suit seeks to have this ordinance declared unconstitutional, null and void, and to have the officers of the city enjoined from its enforcement.

The new law provides for no permit, no bond, no discretion being vested in any one and straight-away prohibits and declares it to be unlawful for solicitors, etc., to go upon private premises, unless they have "been requested or invited so to do by the owner."

There is no burden on interstate commerce here, because there is no license required, there is no permit necessary, there is no authority and power left in the discretion of anyone. All solicitors from out of state are treated alike, there is no prohibition of interstate commerce; all the soli-

citor has to do is to get on a telephone and get an invitation to call at the home.

■ The prohibition of the promiscuous entry into private residences is the proper exercise by the city of Alexandria of the police power vested in it by the state of Louisiana.

Doubtless the draft of the present ordinance was taken from the case of the City of Shreveport v. Cunningham, 190 La. 481, 182 So. 649, 651. The following reasoning from this case applies to the instant case:

"Ordinance No. 50 of 1937 of the City of Shreveport does not pretend 'to suppress' peddlers altogether. It does not prohibit a peddler from hawking his goods in the street, or upon a sidewalk in front of private residences. This ordinance only declares to be a nuisance 'the practice of going in and upon private residences in the City of Shreveport, Louisiana, by solicitors, peddlers, hawkers or itinerant merchants and transient vendors of merchandise, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares and merchandise, and/or for the purpose of disposing of and/or peddling or hawking the same.' "

■ There is want of the declaration by the city of Alexandria that the instant act is a nuisance, as was declared by the city of Shreveport in the above case, but the mere giving life to the ordinance by the legislative branch of the city, and the insertion of a penal section as for the commission of a misdemeanor is a declaration, to our satisfaction, of a nuisance.

Therefore, the ordinance before us for consideration is not in violation of State law and our supreme court has indicated that it is not a violation of the Federal law.

We shall now investigate further as to whether the ordinance at hand is in violation of the Federal law.

In the case of Real Silk Hosiery Mills, Inc., v. City of Portland et al., 268 U.S. 325, 45 S.Ct. 525, 69 L.Ed. 982, a case very much relied upon by plaintiff, the ordinance imposed a license tax on solicitors taking orders for hosiery to be shipped to buyers by a manufacturer in another State. This was held to be a burden on interstate commerce and void as violating Constitution Article 1, Section 8, though express purpose was to prevent possible fraud. Our instant case is differentiated because there is no license asked here—consequently no burden on interstate commerce.

The instant case is very similar to the case of Ex parte Hartmann, 25 Cal.App.2d 55, 76 P.2d 709, where the ordinance of the city of. Sacramento, of like character as the instant one, was validated as being the proper exercise of police power, because there was no unlawful regulation of commerce between the states, because the law applied uniformly to all individuals of the particular designated class and it was so whether they were within or without the city of Sacramento, or within or without the state of California.

On the necessity of the declaration of the Act being a nuisance, we quote from the syllabi of the case of McCormick v. City of Montrose, 105 Colo. 493, 99 P.2d 969 (the Supreme Court of the State of Colorado):

"Under statute defining powers of cities and towns, city had power to pass ordinance prohibiting solicitation in private residences without invitation, if such conduct constituted a nuisance in fact and was public in character. * * * If city has power to penalize conduct declared by ordinance to be a nuisance, *it is immaterial whether such conduct was properly given the name of nuisance.*

"An ordinance prohibiting solicitation in private residences without request or invitation had the effect of * * * making the solicitor a trespasser, of abolishing the presumption of implied consent from previous custom for solicitors to enter upon premises uninvited, and of creating a presumption of lack of consent.

"Presumably when a legislative act is passed, it represents the sentiment and expresses the judgment of a majority of the citizens within the legislating governmental division or subdivision concerning the proper policy to be pursued with reference to the subject of the legislation. * * * *Motives actuating legislators, wisdom or*

*unwisdom of a law, and its incidental effects, are not matters with which the judicial branch of the government may properly concern itself, if there is power to enact the law.*

"A city ordinance prohibiting the solicitation of retail business in private residences without the request or invitation of the householders *does not [violate the due process clauses of state or federal constitutions,* and] does not constitute regulation of or interference with 'interstate commerce' within terms of Federal Constitution." (Italics ours.)

Again coming to the Federal courts: Town of Green River v. Fuller Brush Co., 10 Cir., 65 F.2d 112, 114, 88 A.L.R. 177 (no writs sought), has the following language, which we adopt as being applicable here:

"It has been uniformly held that while legislative authority may not arbitrarily interfere with private affairs by imposing unusual and unnecessary restrictions upon a lawful business, yet a considerable latitude of discretion must be accorded to the law making power, and if the regulation operates uniformly upon all persons similarly situated and it is not shown that it is clearly unreasonable and arbitrary, it cannot be judicially declared to be in contravention of constitutional right. Kidd v. Pearson, 128 U.S. 1, 9 S.Ct. 6, 32 L.Ed. 346; Lawton v. Steele, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385; Reinman v. [City of] Little Rock, 237 U.S. 171, 35 S.Ct. 511, 59 L.Ed. 900; Packer Corporation v. State of Utah, 285 U.S. 105, 52 S.Ct. 273, 76 L.Ed. 643, 79 A.L.R. 546. In Schmidinger v. [City of] Chicago, 226 U.S. 578, 33 S.Ct. 182, 184, 57 L.Ed. 364, [Ann.Cas.1914B, 284,] the court said:

" 'This court has frequently affirmed that the local authorities intrusted with the regulation of such matters, and not the courts, are primarily the judges of the necessities of local situations calling for such legislation, and the courts may only interfere with laws or ordinances passed in pursuance of the police power where they are so arbitrary as to be palpably and unmistakably in excess of any reasonable exercise of the authority conferred.' ".

There is much similarity in the facts of this case with the instant one: The solicitor in the former visits the private home uninvited and has specimens of the articles he seeks to sell and may even give an illustration of their practical use to the housewife. In the latter case the solicitor exhibits one of the issues of his magazine and seeks to sell a yearly subscription, or more, based upon its exhibit.

The Circuit Court of Appeals for the Tenth Circuit took judicial notice that the frequent ringing of door bells of private residences by itinerant solicitors is a nuisance to the occupants of the homes. It declared that since the purpose of the ordinance was to prevent uninvited visitation of private residences for business purposes, there was no valid distinction at law to be made between the mere solicitor who took an order and the transient vendor of merchandise who actually made a delivery of the article sold, upon his first call.

This court went further and held that the company represented by the solicitor was not deprived of its property without due process, nor was it denied equal protection under the laws or was there an unwarranted interference with interstate commerce. Amend. 14; Const. Art. 1, Sec. 8.

Also in the case of Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262, wherein the use of the streets was involved, and there was a question of the distribution of pamphlets, the validity of the ordinance was dependent upon the question as to whether or not the pamphlet was in the nature of commercial advertising or involved the dissemination of religion, the propagation of political ideals, etc. In this case one of the sentences (316 U.S. 52, 62 S.Ct. 921) is quoted:

"We are equally clear that the Constitution imposes no such restraint on government as respects purely commercial advertising."

Federal courts have gone so far as to say that if the ordinances enacted under police power will ruin and destroy the particular business to which it is applicable, the ordinance would still be valid. San Francisco Shipping News Co. v. City of South San Francisco, 9 Cir., 69 F.2d 879.

One of the headnotes of this case is: "Classification of business for purpose of regulatory legislation under police power is question primarily for legislative body, and Federal Courts are reluctant to declare unconstitutional an enactment of lawmaking body of State or any of its agencies or subdivisions."

Invasion of private premises has been permitted by the Supreme Court of the United States where the right of the freedom of the press, freedom of speech, and freedom of worship are involved—guaranties under the Bill of Rights. This is immediately gathered in the more recent case of Martin v. City of Struthers, Ohio, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313, wherein the ordinance involved made it unlawful for anyone distributing literature advertising a religious meeting to ring a door bell or otherwise summon the inmates of any residence to the door. A footnote by Justice Black, the organ of the court, is: "This ordinance was not directed solely at commercial advertising. Cf. Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262; Town of Green River v. Fuller Brush Co., 10 Cir., 65 F.2d 112, 88 A.L.R. 177."

■ Articles of interstate commerce are not, because of their origin, entitled to permanent immunity from the exercise of state regulatory power. Packer Corporation v. State of Utah, 285 U.S. 105, 52 S.Ct. 273, 76 L.Ed. 643, 79 A.L.R. 546.

Plaintiff contends that the yearly subscription to the magazine he sells is two dollars, and that "to arrange for an appointment or an interview with the prospective purchaser would require too much time to make the interview profitable." He does admit in brief that a seller of encyclopedias or articles of considerable cost might afford sufficient profit for the use of that much time.

The defendant in its brief says that: "It probably takes thirty seconds to make a telephone call and even if the conversation consumed five minutes time more than one hundred people could be contacted in this way each day."

■ We conclude that the instant ordinance does not prohibit the plaintiff from engaging in his business, but merely regulates the manner in which he shall conduct that business. This is a right which the state may exercise under its police power, and is not in violation of Federal law.

We do not think the placing of signs by citizens at their front entrances, or on their lawns, either inviting peddlers, or salesmen, or guarding them off the premises, is the proper solution.

The magazine publishers may solicit and get their subscriptions by mail: they sell their magazines by the copy at all the newshops of the city; and further, if they wish to have canvassers for subscriptions, these may enter the homes by appointment, made by mail or telephone.

It is generally known to be a nuisance, in fact and of no small degree, to be molested on and off by all kinds of solicitors. They break into your rest; they stop the wife from her household duties, or the work of the husband in the garden or on the lawn. The practice affords intrusion into your premises of people who may, by night, become robbers. Your personal privacy is often and decidedly invaded. These callers are different characters to different people. They are ready to impose upon the poor and ignorant, bluff the timid, etc.

Armed with a right of ingress to the private home granted by the courts, many solicitors who, at first, are polite and retieent will become persistent when met with a firm refusal to buy. If then the housewife loses temper, the solicitor affects the loss of his, too, and the colloquy becomes ugly.

Surely, we grant that plaintiff's solicitors have not been proved of objectionable character, and for the decision of the case let us admit them as irreproachable Chesterfields, but this law is to make for the peace of all householders from solicitors of all grades and classes.

Plaintiff in its brief states that the most important question for the court to decide is: "May a municipality have the right to completely prohibit complainant's interstate business by the passage of such an ordinance when the Supreme Court and other Federal Courts have held time and again that it is unlawful to even burden interstate business?"

Plaintiff lists the following cases to answer the above question in the negative. Each of the cases invalidates a municipal ordinance:

1. Pictorial Review Co. v. City of Alexandria et al., D.C., Alexandria Division, 46 F.2d 337.

2. Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A.1916D, 545, Ann. Cas.1917B, 283.

3. Dobbins v. City of Los Angeles, 195 U.S. 223, 25 S.Ct. 18, 49 L.Ed. 169.

4. Crutcher v. Commonwealth of Kentucky, 141 U.S. 47, 11 S.Ct. 851, 35 L.Ed. 649.

5. Rearick v. Commonwealth of Pennsylvania, 203 U.S. 507, 27 S.Ct. 159, 51 L.Ed. 295.

6. Stewart v. People of State of Michigan, 232 U.S. 665, 34 S.Ct. 476, 58 L.Ed. 786; Caldwell v. State of North Carolina, 187 U.S. 622, 23 S.Ct. 229, 47 L.Ed. 336.

7. Real Silk Hosiery Mills v. City of Portland, 268 U.S. 325, 45 S.Ct. 525, 69 L.Ed. 982.

■ Our answer is that a municipality may prohibit a certain manner of doing business, if all in the same class are treated alike. There is no absolute prohibition by the instant ordinance of the selling of magazines within the city of Alexandria; only a certain manner of soliciting the sale of magazines is prohibited under the police power. This is not an unwarranted and illegal burden on interstate commerce.

All of the above cases except the second and third provide for the *licensing* by the municipality, which means the burdening of interstate commerce; the second and third cases are instances of flagrant *discrimination* within a class involved.

■ Barbier v. Connolly (113 U.S. 27, 5 S.Ct. 357, 359, 28 L.Ed. 923) is an old case—one cited often in the lecture halls of our law schools—and the following language from it appeals to us:

"The fourteenth amendment, in declaring that no state 'shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness, and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of any one, except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition; and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses.

"But neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity."

Accordingly, the suit of plaintiff is dismissed at his costs. Judgment will be signed in accordance.