### PEOPLE *v*. WHITE.

1. COMMERCE—POWERS OF CONGRESS—FEDERAL DECISIONS.
   The power given congress by the United States Constitution to regulate commerce among the several States is exclusive, and the decisions of the United States Supreme Court upon that question are controlling.

2. SAME—MUNICIPAL CORPORATIONS—LICENSES—PEDDLERS — INTERSTATE COMMERCE.
   A municipal license tax upon a peddler engaged in interstate commerce is a discriminating tax upon the goods themselves, and constitutes an illegal interference with such commerce.

3. SAME—INTERSTATE COMMERCE.

A salesman for foreign employer is engaged in interstate commerce where he sells goods on commission by soliciting orders from house to house for future delivery and fills such orders by delivering goods shipped him by the employer from another State.

Exceptions before judgment from Oakland; Smith, J. Submitted June 15, 1917. (Docket No. 133.) Decided July 26, 1917.

William N. White was convicted of peddling without a license. Reversed.

*Earle M. French* and *George W. Eyster,* for appellant.

*Peter B. Bromley,* City Attorney, for the people.

STEERE, J. While plying his trade as a peripatetic vendor of aluminum cooking utensils, from house to house in the city of Pontiac, Mich., defendant was apprehended and subsequently prosecuted for peddling within the city limits without a license in violation of a municipal ordinance which established a schedule of licenses imposed upon certain kinds of business. By it a license fee of $5 per day was required for peddling goods, wares, and merchandise upon the streets "or soliciting from house to house either for immediate or future delivery." Violation of the ordinance was made punishable by fine or imprisonment. It is undisputed that on the date charged defendant was offering his wares from house to house in the city of Pontiac, displaying samples and soliciting orders for future delivery without having obtained a license in compliance with the ordinance. Trial in justice's court and retrial on appeal in the circuit court resulted in convictions, and the case has been removed to this court for review on exceptions before sentence.

Defendant claimed in the lower courts and urges here that he was acting as a salesman of goods manufactured without the State, under written contract with the Aluminum Cooking Utensil Company, a foreign corporation of New Kensington, Pa., soliciting orders for its goods, for future delivery, which were to be subsequently filled by shipments from Pennsylvania, and, as the goods he was selling were in another State, to be delivered by interstate transportation, he was immune from the ordinance under the Federal interstate commerce law, as construed by the Federal courts, against which contravening local laws become silent.

The contract under which he operated is a somewhat lengthy agreement for selling goods on commission, evidently prepared with care, stated by the Aluminum Company's sales manager to be the regular form of salesman's contract made with each man representing it, which, amongst its numerous provisions, required defendant, who is designated its "salesman," to deposit with the company $5 for a sample outfit and diligently proceed to solicit orders for its aluminum utensils in territory assigned to him, "to keep faithfully and accurately a complete record of all receipts and expenditures in a book to be supplied by the company, and known as a 'salesman's account and expense book,'" to make two reports each week of the amount of each day's orders and "be personally responsible for the payment for all goods included in requisitions sent to the company for goods to fill orders solicited for the company by him," giving satisfactory security therefor, his commission to be on different specified goods from 33½ to 40 per cent. of the company's current retail prices, the net amount to be remitted promptly after deducting such commissions; failure to make sales at list prices averaging a specified amount per week is made ground for forfeiting his contract.

The material evidence produced by defendant, briefly stated, showed that he had been engaged for several years in vending the Aluminum Company's wares through different parts of this State on commission; that neither he nor the company carried any stock of goods in the State, but he canvassed from house to house, displaying his samples, soliciting orders for future delivery, writing down in a book he carried for that purpose each order he secured, in detail, with the name, address, telephone number, etc., of the party giving it, which he later copied on an order blank furnished by the company, sending each order, with the name and address of the purchaser, signed by him as salesman, to the home office of the company at New Kensington, Pa., where it was filled and the goods shipped to him for delivery; that he made no sales of the samples he carried, and delivered no goods, except those for which orders had been previously taken and sent to the home office, and by it shipped to him, and no goods were shipped to him, except to fill such orders; that the goods were sometimes sent by parcel post, sometimes by express, and sometimes by freight, as he ordered them; that he usually made periodical deliveries, and when an accumulation of orders was sent in, calling for a quantity shipped by freight, they would be filled to him in one package, the ordered articles nested together, and he would sort them out for delivery according to the orders previously taken; that rejected goods, or those left on hand for any reason when he came to make deliveries, were shipped right back to the company, unless he could use them to fill orders given prior to the time they were shipped, but the general practice was to return all goods rejected by customers; that under instructions from the company he never sent in an order for any goods without sending the date of the order, with the name and address of the purchaser.

The controlling question in this case is whether the business defendant was pursuing at the time he is charged with violating the Pontiac ordinance constituted under the Federal law interstate or domestic commerce. That the power given congress by the United States Constitution to regulate commerce among the several States is exclusive, and the decisions of the United States Supreme Court upon that subject are controlling, cannot be questioned. Therefore decisions of this court, or other State courts, not in harmony with the Federal interpretation of this law, are not to be followed. In *Lyng* v. *Michigan*, 135 U. S. 161 (10 Sup. Ct. 725), the court thus broadly states the rule:

"We have repeatedly held that no State has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, for the reason that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to congress. *Leloup* v. *Port of Mobile*, 127 U. S. 640, 648 (8 Sup. Ct. 1380), and cases cited."

Along these lines it is held that any tax upon the seller of goods, the sale of which requires their transportation from one State to another for delivery, is a discriminating tax upon the goods themselves, the imposition of which by a State or municipality is an illegal interference with interstate commerce. This rule has been applied to sewing machine and book agents, vendors of patent medicines, knives, brooms, pictures and picture frames, stoves, and other articles of traffic sold by canvassing from house to house with samples, where orders are taken for future delivery only, and the articles so sold are shipped from other States to fill such orders, on the theory that the goods so ordered and shipped are directly appropriated to

keeping contracts, fulfillment of which necessitates their transportation for delivery by interstate commerce. In the case of *Crenshaw* v. *Arkansas*, 227 U. S. 389 (33 Sup. Ct. 294), where the commodity canvassed for was a range sold by sample, the subject will be found fully discussed, with a review of several leading cases. In point upon the questions raised by this record the following is well condensed from cited decisions by Judge Dillon in his work on Municipal Corporations (Vol. 4, 5th Ed.), § 1356:

"Various decisions are to be found by courts of different States which purport to sustain a tax imposed upon canvassers or drummers selling goods to be afterwards brought within the State, where the goods have been shipped in bulk to the agent or drummer or to a distributing agent, and have been by him delivered to the purchaser, instead of being shipped directly to the purchaser from without the State; but any supposed ground of distinction, based upon the fact that the goods are shipped to the salesman or distributing agent in bulk and by him assorted and delivered to the purchasers, has been rejected by the Supreme Court of the United States, which has declared that the grounds of distinction are not sufficient to remove the transactions from the domain of interstate commerce. Where the question of the power of the State to levy a privilege or occupation tax arises in a controversy with a drummer or canvasser, representing a non-resident, the fact that no discrimination is made between domestic and foreign drummers, and that all are taxed alike, is not material. Interstate commerce, as a business or occupation, cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the State."

The abundant cases there cited cover this case in all its aspects. Neither are we able to distinguish it in principle from *Stewart* v. *Michigan*, 232 U. S. 665 (34 Sup. Ct. 476), which in its controlling features was held, upon the Federal question involved, to have been

disposed of in conflict with the rule announced in *Crenshaw* v. *Arkansas, supra,* and cases there reviewed, and the decision of this court sustaining Stewart's conviction was reversed. It follows, from the foregoing, that the conviction appealed from must be set aside, and the record remanded for whatever further proceedings may be required in harmony with this opinion.

Reversed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.