## TOLEDO FURNACE CO. *v.* LANSING CO.

1. COMMERCE — FOREIGN CORPORATION SHIPPING DIRECT TO PURCHASER NOT DOING BUSINESS IN STATE.

Where the general sales agent of a foreign corporation maintained an office in this State, in charge of an agent, who executed sales contracts for pig iron which was shipped from out of the State direct to the purchaser, said corporation was engaged in interstate commerce and therefore was not doing business in this State within the meaning of 2 Comp. Laws 1915, § 9063 *et seq.*

2. SALES—CONTRACTS—BREACH—ERRONEOUS INVOICE NOT BREACH
   OF CONTRACT—RESCISSION.

   Where plaintiff contracted to ship to defendant a certain
   quantity of pig iron each month under each of two con-
   tracts, and one month plaintiff shipped the designated
   quantity under both contracts but erroneously billed it
   all under the first contract, defendant, after accepting
   same, was not entitled to rescind the second contract for
   default, since, there being no breach of the contract in
   fact, there was none in law.

Error to Ingham; Carr (Leland W.), J.    Submitted
June 6, 1922.    (Docket No. 11.)    Decided October 2,
1922.

Assumpsit by the Toledo Furnace Company against
the Lansing Company for breach of a contract for the
purchase of pig iron.    Judgment for defendant.
Plaintiff brings error.    Reversed.

*Charles W. Nichols* (*John B. Putnam*, of counsel),
for appellant.

*Hayden & Ballard* (*Edmund C. Shields*, of counsel),
for appellee.

WIEST, J.    In August, 1920, the parties hereto
entered into two contracts; under one of which, known
as No. 2444, defendant purchased 500 tons of pig iron
at $45 per ton, f. o. b., Toledo, Ohio, to be delivered by
plaintiff in equal monthly quantities over the first
half of the year 1921, and under the other known as
No. 2448, 300 tons of pig iron at $46 per ton, f. o. b.,
Toledo, to be delivered in equal monthly quantities
over the same period.    Pickands, Mather & Co., a co-
partnership, of Cleveland, Ohio, represented the plain-
tiff company as its general sales agents with H. E.
Blackwell as district sales manager for the State of
Michigan, and Mr. Blackwell maintained an office in
the city of Detroit and executed the contracts in behalf

of plaintiff. Following the making of the contracts there was a decided slump in the price of pig iron, and in December, 1920, defendant sought to be released from the contracts but plaintiff declined to accede to such request. In January, 1921, plaintiff shipped to defendant two car loads of pig iron; one carrying 52 tons, 1,700 pounds, and the other 75 tons, 660 pounds, and invoiced both lots under contract No. 2444. Defendant received the shipments and paid for them according to the invoices, and in February notified plaintiff of rescission of contract No. 2448, on the ground of breach thereof for failure of plaintiff to make the January delivery thereunder. Thereupon plaintiff sought to correct the invoice of the 52 tons, and claimed there had been a mistake, as it was intended under contract No. 2448. Defendant refused to recede from its rescission or to take any shipments thereafter under contract No. 2448, but accepted and paid for shipments under contract No. 2444. This suit was brought by plaintiff to recover its damages under contract No. 2448. Defendant pleaded the general issue and gave notice of the claimed breach and also that plaintiff had not complied with the law of the State relative to foreign corporations doing business within this State and, therefore, could not bring suit. The case was submitted to the jury upon testimony introduced by plaintiff and correspondence between the parties, and the issue was made to turn upon the question of whether there was a mistake in fact in invoicing the 52 tons of iron under contract No. 2444. Upon such issue the jury found for the defendant.

There was undisputed testimony that:

"It is understood by people that buy pig iron and sell pig iron that what is meant by equal monthly installments is approximately—it is almost impossible to load each car with the exact amount, and if it is

within a few tons it is permissible. It has always been the custom with the Lansing Company and ourselves in the past, and has always been the course of dealing between us and the Lansing Company."

We call attention to this merely to show there was no significance in the fact that the car load lots did not meet to a pound the quantity agreed to be shipped during the month of January. The learned circuit judge held that the contract related to interstate commerce and, therefore, plaintiff was not doing business within this State in contravention of the statute (2 Comp. Laws 1915, § 9063 *et seq.*). This holding was correct. See *Levin* v. *Fisher*, 217 Mich. 681.

We need consider but one question and that is whether defendant had a right to rescind contract No. 2448 on the claim that there was a failure to deliver the pig iron it called for during the month of January. The decision in the circuit court seems to have proceeded on the theory that plaintiff was in default in not making the stipulated January delivery under contract No. 2448. Approximately the full stipulated January deliveries under both contracts were made but instead of being invoiced under the two contracts they were billed under the first one. Defendant was not deprived of anything in so receiving what plaintiff was under contract to deliver, and did deliver, and is in no position to contend that in accepting more than it was obliged to take under the first contract it could treat such excess delivery as a failure to deliver under the second contract and, therefore, a breach thereof. Defendant was entitled to a certain quantity of iron for January and got it, and we cannot hold that because the two shipments were invoiced under the first contract there was a breach of promised delivery under the second contract. If defendant had stood for strict performance of the first contract at the time of the deliveries it would have rejected the clearly wrong

invoice and the mistake could have readily been corrected on paper and no one harmed. We do not consider that the wrong invoicing raised a question of fact determinative of the contract obligation of defendant. Defendant got what it contracted for, and deliveries corresponding in quantity to the two contracts show there was no breach in fact. There having been no breach in fact, there was none in law.

The judgment is reversed and a new trial granted, with costs to plaintiff.

FELLOWS, C. J., and McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.