RATH PACKING CO. v. GENERAL COLD STORAGE CO.

1. COMMERCE—INTERSTATE COMMERCE REGULATED BY CONGRESS.
    Regulation of commerce between the States of the Union
    has been committed to the congress of the United States,
    and the States are inhibited from levying a direct burden
    upon such interstate commerce.

2. SAME—SALES DIRECT TO CUSTOMERS THROUGH BROKERS INTERSTATE COMMERCE.
    Orders for meat from customers taken by brokers in this
    State and filled by a foreign corporation, where each
    customer's goods were separated, properly marked, shipped
    in a car consigned to its order, and delivered direct to the
    customer, were acts in interstate commerce.

3. SAME—STORAGE OF MEAT INCIDENTAL TO INTERSTATE COMMERCE.
    Where a foreign corporation selling meat direct to its
    customers in this State was occasionally forced to place
    meat in cold storage because of refusal by customers to
    accept same, due to delay in shipment caused by conditions
    during the war, the placing of meat in cold storage under
    said circumstances was but incidental to its interstate
    business, and did not constitute doing business in this
    State, requiring compliance with 2 Comp. Laws 1915, §
    9063 et seq. .

4. WAREHOUSEMEN—NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.
    In an action by a meat dealer against a cold storage
    corporation for damages caused by its alleged failure to
    properly care for plaintiff's meats placed in defendant's
    cold storage plant, evidence held, to present a question
    of fact for the jury.

Error to Wayne; Hunt (Ormond F.), J.    Submitted
January 3, 1923.    (Docket No. 29.)    Decided March
22, 1923.

Assumpsit by the Rath Packing Company against
the General Cold Storage Company for breach of a

On sale by foreign corporation of goods stored in State as
intrastate commerce, see notes in 18 L. R. A. (N. S.) 134 and
L. R. A. 1916F, 334.
    On question of right of foreign corporation to sue, see note
in 24 L. R. A. 289.
    On presumption and burden of proof as to care or negligence
in respect to subject of bailment, see note in 43 L. R. A. (N. S.)
1176.

contract of storage.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

*William Henry Gallagher*, for appellant.

*Welsh, Bebout & Kahn*, for appellee.

FELLOWS, J.   Plaintiff is an Iowa corporation engaged in the sale of meats at wholesale.   Its plant is located at Waterloo in that State.   Through a broker in Detroit it sold meats to retail dealers there. It maintained no office in the State.   The broker solicited orders for plaintiff and others on a commission basis and maintained his office at his own expense.   Upon receipt from the broker of the various orders, plaintiff would make up a car, each dealer's goods being separated and properly marked, and the car would be consigned to its order.   Upon its arrival in Detroit a cartage firm made deliveries to the customers of the original packages.   During the late war government material had preference over individual shippers, causing some delay in delivery of plaintiff's products in Detroit.   In some instances the customers declined to accept the delayed shipments and the meats were placed in cold storage at defendant's cold storage plant.   From there they were shipped by plaintiff's order to other States and in some instances were sold in Detroit.   For defendant's failure to properly care for the meats kept by it in cold storage this action is brought.   The defense was that plaintiff was carrying on business in this State without having complied with Act No. 206, Pub. Acts 1901, as amended (2 Comp. Laws 1915, § 9063 *et seq.*).

The regulation of commerce between the States of the Union has been committed to the congress of the United States.   That the States are inhibited from levying a direct burden upon such interstate commerce has been settled by a long line of decisions and is

recognized in the act under consideration (2 Comp. Laws 1915, § 9070). That the methods pursued by plaintiff in procuring orders and shipping the meats to its customers in Detroit were acts performed in interstate commerce and beyond the power of the State to directly burden, numerous decisions make clear. A few of them will be considered. A case quite similar to the instant one is *Crenshaw* v. *Arkansas,* 227 U. S. 389 (33 Sup. Ct. 294). In that case the salesmen of the Range Company traveled through the country carrying a sample stove. They took orders and obtained notes for the purchase price. The orders were forwarded to the division superintendent in Arkansas who passed upon the credit of the purchasers and sent the accepted orders to the Range Company at St. Louis, Missouri. The stoves were shipped in car load lots and delivered by employees of the Range Company to the purchasers. It was held that the business transacted was in interstate commerce and that it was beyond the power of the State to hamper and burden it. *Stewart* v. *Michigan,* 232 U. S. 665 (34 Sup. Ct. 476), reversing *People* v. *Stewart,* 167 Mich. 417, was a somewhat similar case. An exhaustive review of the authorities and a full discussion of the question will be found in *Butler Bros. Shoe Co.* v. *United States Rubber Co.,* 84 C. C. A. 167, 156 Fed. 1. See, also, *Caldwell* v. *North Carolina,* 187 U. S. 622 (23 Sup. Ct. 229); *Sucker State Drill Co.* v. *Wirtz,* 17 N. D. 313 (115 N. W. 844, 18 L. R. A. [N. S.] 134); *People* v. *White,* 197 Mich. 283; *City of Detroit* v. *Paper Co.,* 202 Mich. 22; *Toledo Furnace Co.* v. *Lansing Co.,* 220 Mich. 143; *Levin* v. *Fisher,* 217 Mich. 681; *Champlain Realty Co.* v. *Town of Brattleboro,* U. S. Adv. Ops. 1922, 23, p. 165 (43 Sup. Ct. 146) decided December 11, 1922; *Standard Fashion Co.* v. *Cummings,* 187 Mich. 196. In the last cited case it was said:

"We are of opinion that the delivery of these goods to the common carrier at the places named to be transported to Cummings at Paw Paw, Mich., was an act of interstate commerce, and, so long as the business of plaintiff, a foreign corporation, was limited to the acts of interstate commerce, and did not establish within the State a local agency to represent it in the sale of its goods, wares, and merchandise, it was not amenable to the law of this State requiring foreign corporations, as a condition of transacting business in this State, to file a copy of their charter or articles of association as prescribed by the Michigan act."

The leading case of *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500 (24 Sup. Ct. 365), relied upon by defendant's counsel, is clearly distinguishable from the instant case and from those cited.   In that case the plaintiff in error kept in warehouses in Memphis, Tennessee, a stock of its steel and wire products to be shipped from there to its customers in Tennessee and other States, that city being a commercial center. It was held that under these circumstances such products had acquired a situs in Tennessee and were subject to the State law.   But the goods were there placed in the warehouses in the regular conduct of the business of the plaintiff in error, and were so placed to facilitate their sale and the business of the company and not because an emergency arose requiring their storage.   This case was considered and quoted from in *City of Detroit* v. *Paper Co., supra.*

The difficult question in the instant case grows out of the fact that due to the war and priority given shipments of war materials over other shipments there was an occasional delay in the shipments of plaintiff's meats from Waterloo, Iowa, to Detroit, resulting in refusals of customers to accept the goods ordered. This necessitated the storage and re-sale of the meats in order to save total loss.   It did not arise in the ordinary course of plaintiff's business but became necessary under then existing conditions in order to

salvage the meats.   We think it may be fairly said that what was done to save a total loss of the meats was done not in the carrying on of the regular business of the plaintiff but as an incident to it.   In 14A C. J. p. 1276, supported by a large number of cited authorities, it is said:

"The courts are in agreement that the transaction in a State by a foreign corporation of acts of business, whether commercial or otherwise, which are merely incidental to the business in which such corporation is ordinarily engaged, does not constitute the doing or carrying on of business within the meaning of statutes imposing conditions, restrictions, regulations, etc., on the right of foreign corporations to do business."

*Kelley* v. *Rhoads*, 188 U. S. 1 (23 Sup. Ct. 259), involved a statute of Wyoming taxing livestock brought into the State for the purpose of being grazed. The plaintiff drove a herd of sheep from a point in Utah across the State of Wyoming to a point in Nebraska, consuming from six to eight weeks in making the trip.   While en route the sheep grazed in the State of Wyoming.   It was held that the owner was not liable for the tax, that the grazing of the sheep was but an incident of the transportation of the sheep in interstate commerce and it was said:

"The question turns upon the purpose for which the sheep were driven into the State.   If for the purpose of being grazed, they are expressly within the first section of the act.   But if for the purpose of being driven through the State to a market, they would be exempt as a subject of interstate commerce, though they might incidentally have supported themselves in grazing while actually in transit."

In *Keating Implement & Machine Co.* v. *Favorite Carriage Co.*, 12 Tex. Civ. App. 666 (35 S. W. 417), the carriage company had sold and shipped in interstate commerce certain goods to a customer who failed to pay for them.   They were retaken and placed on

sale on commission. An action for their conversion was defended on the ground that the carriage company had not filed with the secretary of State copies of its articles of incorporation, etc. It was held that the defense was not available and while not directly deciding the question it was said:

"It seems to be conceded that it had the right to take the vehicles back in self-protection, but it is insisted they should have been reshipped to Ohio and not sold here. Such requirement would seem to be unreasonable. In many instances the character of the goods, the freight rates, and the difference in the markets would practically forbid such reshipment. It would tend to interfere with the freedom of interstate traffic, which can only be regulated by congress."

Similar in facts and holding to the last cited case will be found *Penn Collieries Co.* v. *McKeever*, 183 N. Y. 98 (75 N. E. 935, 2 L. R. A. [N. S.] 127), and *Vulcan Steam Shovel Co.* v. *Flanders*, 205 Fed. 102. In the New York case the purchaser of goods shipped in interstate commerce had failed to accept the goods; in the Federal case the purchaser had failed to pay the purchase price. In both cases the goods were resold and it was held that such resale did not constitute carrying on business under the corporation acts. In each case the resale was an incident of the interstate transaction. And this court in *Tidey* v. *Kent Circuit Judge*, 179 Mich. 580, recognized that an incident to the business, that of bringing a suit in a State court, was not the carrying on of business in the State.

Recurring briefly to the instant case: Plaintiff was engaged in interstate commerce; in such interstate commerce it shipped to various of its customers in Detroit perishable goods; they were rejected because of delay incident to war activities; to minimize its loss, to salvage such perishable goods, it placed them in cold storage until another customer could be obtained

and then sold them.     This was an incident to the business conducted in interstate commerce and immune from a direct burden at the hands of the State.

The testimony of the broker who examined the cars of meat coupled with the notations by defendant upon its receipts of such meats as were not in good condition, taken in connection with the rule announced in *Thomas Canning Co.* v. *Railway Co.*, 211 Mich. 326, and *Schwartz* v. *Michigan Warehouse Co.*, 219 Mich. 401, took the question of defendant's liability to the jury.

The judgment will be affirmed.

WIEST, C. J., and MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.